**KAZEROUNI LAW GROUP, APC**
Abbas Kazerounian, Esq. (249203)
ak@kazlg.com
Matthew M. Loker, Esq. (279939)
ml@kazlg.com
245 Fischer Avenue, Unit D1
Costa Mesa, CA 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

**HYDE & SWIGART**
Joshua B. Swigart, Esq. (225557)
josh@westcoastlitigation.com
2221 Camino Del Rio South, Suite 101
San Diego, CA 92108
Telephone: (619) 233-7770
Facsimile: (619) 297-1022

**LAW OFFICE OF CLARK OVRUCHESKY**
Clark Ovruchesky (301844)
co@colawcalifornia.com
750 B. Street, Suite 3300
San Diego, California 92101
Telephone: (619) 356-8960
Facsimile: (619) 330-7610

*Attorneys for Plaintiff,*
Kellie Gadomski

*KAZEROUNI LAW GROUP, APC*
*245 FISCHER AVENUE, UNIT D1*
*COSTA MESA, CA 92626*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **KELLIE GADOMSKI, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,**<br><br>**Plaintiff,**<br><br>v.<br><br>**EQUIFAX INFORMATION SERVICES LLC,**<br><br>**Defendant.** | **Case No.:**<br><br>**CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR VIOLATIONS OF THE FAIR CREDIT REPORTING ACT, 15 U.S.C. § 1681, ET SEQ.**<br><br>**JURY TRIAL DEMANDED** |

///

///

///

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

### INTRODUCTION

1.  The United States Congress has found the banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of the banking system. Congress enacted the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA"), to insure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy. The FCRA seeks to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other information on consumers. The FCRA also imposes duties on the sources that provide credit information to credit reporting agencies ("CRAs"), called "furnishers."

2.  There exists today in the United States a pervasive and fundamental misunderstanding about the long term impact filing a consumer bankruptcy has on a consumer's credit worthiness. Specifically, many consumers believe that because a bankruptcy can be reported on their credit report for ten years their credit worthiness will be ruined for the same length of time. This is not true.

3.  The *majority* of consumer debtors who actually file consumer bankruptcy do so to _**raise**_ their credit score and remedy their poor credit worthiness.

4.  It is entirely possible for consumer debtors to have over a 700 Fico Score within as little as 12 months after filing a consumer bankruptcy (Chapter 7 or Chapter 13).

///

///

---

5. Plaintiff **KELLIE GADOMSKI** ("Plaintiff"), through her attorneys, brings this Class Action Complaint for damages, injunctive relief, and any other available legal or equitable remedies on behalf of herself and on behalf of all others similarly situated (the "Class" or "Class Members"), resulting from the illegal actions of Defendant **EQUIFAX INFORMATION SERVICES LLC ("Equifax" or "Defendant"),** with regard to Equifax's reporting of erroneous negative and derogatory reports to Plaintiff's credit report, as that term is defined by 15 U.S.C. § 1681a(g); Equifax's willful and negligent failure to properly investigate the repeated disputes of Plaintiff concerning the inaccurate data Equifax is reporting in consumers' credit files, and Equifax's failure to correct such, which Equifax knew or should have known was erroneous and which caused Plaintiff and the Class damages.

6. More specifically, Plaintiff, on behalf of herself and all others similarly situated, bring this complaint, by and through her attorneys, for damages arising out of the systematic issuance of erroneous credit reports by Equifax. Equifax has erroneously reported legally and properly discharged debts of Plaintiff and the Class as legally owed, with consistent and knowing disregard for Plaintiff's rights and their own statutory obligations. Equifax has negligently and willfully failed to employ reasonable procedures—including procedures readily available to them of which they are aware—to ensure maximum possible accuracy of their credit reports. Even after Plaintiff and the Class have informed Equifax of the falsely reported discharged debts as due and owing, Equifax has negligently and willfully failed to consistently and adequately correct the erroneous information. Equifax's conduct violates the FCRA.

7. Plaintiff makes these allegations on information and belief, with the exception of allegations that pertain to Plaintiff, or to Plaintiff's counsel, which Plaintiff alleges on personal knowledge.

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

8.   While many violations are described below with specificity, this Complaint alleges violations of the statutes cited in their entirety.

9.   Unless otherwise stated, all the conduct engaged in by Equifax occurred in California.

10.  Any violations by Equifax were knowing and intentional, and that Equifax did not maintain procedures reasonably adapted to avoid any such violation.

11.  Unless otherwise indicated, the use of any Equifax's name in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of Equifax.

**JURISDICTION AND VENUE**

12.  Original jurisdiction is conferred on this Court by 28 U.S.C. § 1331, as a civil action arising under the laws of the United States, and by 15 U.S.C. § 1681(p), as a civil action to enforce a liability created under the FCRA.

13.  The Court has personal jurisdiction over Equifax as Equifax conducts business within the State of California and has purposefully availed themselves of the laws and markets of the State of California and this district.

14.  Venue is proper in the United States District Court, Eastern District of California pursuant to 28 U.S.C. § 1391 for the following reasons: (i) Plaintiff resides in the County of San Joaquin, State of California, which is within this judicial district; (ii) the conduct complained of herein occurred within this judicial district; and, (iii) Equifax conducted business within this judicial district at all times relevant.

///

///

///

///

///

**PARTIES**

15. Plaintiff is a natural person who resides in the City of Tracy, County of San Joaquin, in the State of California.  In addition, Plaintiff is a "consumer" as that term is defined by: Cal. Civ. Code § 1785.3(b) and 15 U.S.C. § 1681a(c).

16. Defendant Equifax is a corporation whose primary corporate address is in the City of Atlanta, in the State of Georgia, and is authorized to do business in the State of California.

17. Equifax is regularly engaged in the practice of assembling and evaluating consumer credit information for the purpose of furnishing to third parties reports of consumers' credit histories, commonly referred to as "credit reports," and defined as "consumer reports" under 15 U.S.C. § 1681a (hereinafter, "Credit Reports"). Equifax uses means and facilities of interstate commerce for the purpose of preparing and furnishing Credit Reports and, hence, is each a "consumer reporting agency" within the meaning of FCRA, 15 U.S.C. § 1681a(f).

18. The FCRA and the facts alleged in this Complaint relates to inaccurate and materially misleading credit information that was allowed to be reported by Equifax regarding specific transactions and/or experiences pertaining to Plaintiff and Plaintiff's credit worthiness, credit standing, and credit capacity. Such credit information was used or was expected to be used, or collected in whole or in part, for the purposes of serving as a factor in establishing Plaintiff's eligibility for, among other things, credit to be used primarily for personal, family, household and employment purposes.

///

///

///

///

///

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

## GENERAL CREDIT REPORTING INDUSTRY ALLEGATIONS

19. Plaintiff alleges that Equifax is familiar with credit reporting industry standards and subscribes thereto.

20. Plaintiff alleges that Equifax understands that deviation from credit reporting industry standards can and often does result in denial of credit, higher interest rates, and prompts those making credit decisions to draw a more negative inference from the reported data than if Equifax reported in accordance with the recognized industry standard.

21. Plaintiff alleges that all actions alleged herein by Equifax was done knowingly, intentionally, and in reckless disregard for credit reporting industry standards in an attempt to purposefully undermine Plaintiff's ability to reorganize and repair Plaintiff's FICO Score.

22. In the alternative, Plaintiff alleges that Equifax's actions were the result of reckless policies and procedures that inevitably led to inaccurate, misleading, or incomplete credit reporting.

   **a. FICO**

23. FICO Inc. ("FICO") is a leading analytics software company with its principal headquarters located in San Jose California. FICO has over 130 patents related to their analytics and decision management technology, and regularly uses mathematical algorithms to predict consumer behavior including credit risk.

24. The FICO Score has become the standard measure of consumer credit risk in the United States and is used in ninety percent of lending decisions.

25. A FICO score consists of a three-digit number summarizing a consumer's credit risk or likelihood to repay a loan. FICO periodically updates its scoring models resulting in multiple FICO Score versions.

26. Base FICO Scores range from 300 to 850, while industry-specific FICO Scores range from 250-900. A higher FICO Score demonstrates lower credit risk or less likelihood of default.

27. Different lenders use different versions of FICO Scores when evaluating a consumer's credit worthiness.

28. There are 28 FICO Scores that are commonly used by lenders.

29. A consumer's FICO Score is calculated based solely on information in consumer credit reports maintained at credit reporting agencies ("CRAs").

30. The three largest CRAs are Equifax, Experian, and TransUnion.

31. FICO does not control what information is provided on a consumer's credit report. Instead, the scoring models or algorithms are based on the premise that information provided by the CRAs is accurate and complies with credit reporting industry standards.

32. There are five key factors that a FICO Score considers: 1) Payment history; 2) Amount of Debt; 3) Length of Credit History; 4) New Credit; and 5) Credit Mix.

33. Each of the five factors is weighted differently by FICO.

34. 35% of a consumer's FICO Score relates to payment history, 30% relates to the amount of debt, 15% relates to the length of credit history, 10% relates to new credit, and the last 10% relates to a consumer's credit mix or the different types of debts reported.

35. Payment history refers to whether a consumer has paid their bills in the past, on time, late or missed payments. The more severe, recent, and frequent the late payment information, the greater the impact on a FICO Score.  Public record items such as bankruptcy, foreclosure, judgments, and wage garnishments are also considered part of a consumer's payment history.

36. In factoring the severity of delinquent payments a FICO Score considers how late the payment continues to be, how much is owed, how recently this occurred, and how many delinquent accounts exist.

37. Once a delinquent account has been remedied the longer the account stays current the more a consumer's FICO Score should increase.

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

38. FICO Score's are entirely dependent upon information provided by Data Furnishers ("DFs") to CRAs.

39. The FICO scoring formula treats both Chapter 7 and Chapter 13 Bankruptcies similarly in terms of their impact on one's FICO Score. Specifically, both "Chapters" have the same level of severity with respect to their FICO Score and for both, FICO uses the FILING DATE to determine how long ago the bankruptcy took place.

### b. Metro 2

40. The Consumer Data Industry Association ("CDIA") is an international trade association representing the consumer credit, mortgage reporting, employment and tenant screening and collection service industries.

41. The credit reporting industry has adopted a standard electronic data reporting format called the Metro 2 format. The Metro 2 format was developed by the CDIA in an effort to universally report debts in a particular manner that is understood to be the most accurate way in which to report a debt. Specifically, Metro 2 format was designed to allow reporting of the most accurate and complete information on consumers' credit history.

42. The Consumer Data Industry Association's ("CDIA") Metro 2 format is *the* credit industry's standardized, objective reporting format used by furnishers to provide information about consumer accounts to consumer reporting agencies.[1]

43. Therefore, the credit reporting industry at large depends upon Metro 2 and the CDIA's recommendations for reporting debt accurately.

///

///

///

---

[1] *See* Consumer Financial Protection Bureau, Key Dimensions and Processes in the U.S. Credit Reporting System, available at: http://files.consumerfinance.gov/f/201212_cfpb_credit-reporting-white-paper.pdf

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

44. The CDIA is *the* expert on accurate credit reporting. In support of this allegation, Plaintiff avers the following:

    a. The CDIA offers an FCRA certificate program for all CRAs

    b. The CDIA offers an FCRA awareness program for all CRAs.

    c. The CDIA offers an FCRA certificate program for DFs.

    d. The CDIA offers an FCRA awareness program for DFs.

    e. The CDIA offers a Metro 2 Learning system to provide detailed instructions on the use of Metro 2 format to ensure understanding of the reporting guidelines for each field of the Metro 2 Format as well as the relationship between multiple fields.

    f. The CDIA hosts workshops developed and authorized by Equifax, Experian, Innovis, and TransUnion.

    g. The CDIA developed a credit reporting resource guide for accurately reporting credit.

45. The CDIA's Metro 2 is accepted by all CRAs.

46. The credit reporting accepted industry standards for reporting Metro 2 accurately are found in the CDIA's Credit Reporting Resource Guide ("CRRG").

47. The CRRG outlines the industry standards for most accurately reporting debts using Metro 2.

48. The CRRG is not readily available to the public. It can be purchased online for approximately $229.45.

49. Even if a buyer is ready and able to pay for the CRRG, the CDIA will NOT grant access to the guide unless the buyer represents an organization included in the Metro 2 Access Policy.

50. When FICO calculates credit scores the algorithms use Metro 2 information based on industry standards established by the CDIA.

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

51. The algorithms used by FICO in determining a consumer's credit score are premised on the Metro 2 data received comporting with the CDIA's recommendations for accurate credit reporting.

52. If the Metro 2 data received by FICO deviates from industry standards an inaccurate or incorrect FICO Score results. If the resulting FICO Score is lower, a consumer will be considered a higher credit risk, resulting in less favorable lending terms.

### c. e-Oscar

53. E-OSCAR is the web based Metro 2 compliant system developed by the CRAs that enables DFs and CRAs to create and respond to consumer credit disputes.

54. When a consumer sends a dispute letter to a CRA, the CRA then sends an automated credit dispute verification ("ACDV") via e-Oscar to the DF.

55. The ACDV contains within it Metro 2 codes next to certain data fields associated with a credit file, e.g. "Account Type - 07" (07 in Metro 2 refers to a Charge Account).

### d. Bankruptcy Credit Reporting Industry Standards & Consumer Information Indicator ("CII")

56. When a consumer files bankruptcy, certain credit reporting industry standards exist.

57. Certain Metro 2 data is regularly expected and calculated by FICO when determining a consumer's credit worthiness.

58. The Consumer Information Indicator ("CII") is a critical *status* field in the Metro 2 Format that indicates a special condition that applies to a specific consumer.

59. Under Metro 2, the CII must be reported only on the consumer to whom the information applies.

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

60. It is the credit reporting industry standard to report a very specific CII upon the occurrence of critical events during a consumer bankruptcy, such as the filing of the bankruptcy and the bankruptcy discharge.

61. In a consumer bankruptcy context, CII Metro 2 Code "A" denotes that a petition for Chapter 7 has been filed, is active, but no discharge has been entered.

62. Such a reporting alerts end users, including potential creditors, that the account is no longer in a collectable status, but is rather being handled by a Chapter 7 trustee.

63. CII Metro 2 Code "E" denotes that a Chapter 7 bankruptcy has been discharged and therefore no longer legally owed.

64. The CII field is a critical field for consumers and directly relates to and impacts a consumer's credit worthiness.

65. The lack of an accurate reporting of the CII field makes it appear that a consumer has not addressed outstanding debt obligations through the bankruptcy process.

66. The lack of an accurate reporting of the CII field also suggests that creditors are free to collect against a consumer per their pre-bankruptcy contract terms, which is inaccurate and materially misleading due to the effect of the bankruptcy orders, such as the automatic stay of section 362 of Title 11, that exist to prevent post-petition collection activity, and the discharge order which enjoins post-discharge collection upon any *in personam* liability for a claim.

67. Accordingly, failure to report the correct CII indicator would prompt those making credit decisions to draw a more negative inference regarding a consumer's credit worthiness.

68. Under the FCRA, a bankruptcy can be reported for ten years.

69. The ten-year rule for reporting runs from the date the bankruptcy was *filed*.

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

70. A consumer's FICO Score is directly related to the date on which a petition is filed and acknowledged.

71. The more time that has passed since the filing of the bankruptcy, the less negative impact the bankruptcy will have on a consumer's FICO Score.

72. Failure to reference the bankruptcy filing and/or discharge in the CII field and/or the correct petition date shall result in a lower FICO Score resulting in those making credit decisions to draw a more negative inference regarding a consumer's credit worthiness.

73. As explained in more detail below, Equifax failed to reference the bankruptcy filing and discharge in the CII field in Plaintiff's Equifax Credit Report in respect to a consumer credit account successfully discharged through Plaintiff's Chapter 7 Bankruptcy.

74. Instead, Equifax allowed the furnisher of the discharged account to report that the *current* pay status of the discharged debt was "Charged Off", i.e. still legally owed, as opposed to "Discharged in Bankruptcy."

75. The "Charge Off" status reported by Equifax, as opposed to the correct status of "Discharged in Bankruptcy", inaccurately and misleadingly suggests that Plaintiff still has a personal legal liability to pay the alleged debt, which is the opposite effect of receiving a Chapter 7 bankruptcy discharge.

## GENERAL ALLEGATIONS

76. Plaintiff is among millions of persons throughout the United States who have filed "no asset" bankruptcies pursuant to Chapter 7 of the U.S. Bankruptcy Code and who have been granted orders of discharge by a U.S. Bankruptcy Court. Under federal bankruptcy laws, such an order fully and completely discharges all statutorily dischargeable debts incurred prior to the filing of such "no asset" bankruptcies, except for those that have been: (1) reaffirmed by the debtor in a reaffirmation agreement; or (2) successfully challenged by one of his creditors in a related adversary proceeding. Plaintiff and the Class

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

are persons for whom such debts have been discharged through bankruptcy.

77.  Equifax is well aware that the effect of a discharge order in a no asset bankruptcy under Chapter 7 is to discharge all statutorily dischargeable debts other than those that have been reaffirmed in a reaffirmation agreement or successfully challenged in an adversary proceeding. Information relating to whether a debt has been reaffirmed or successfully challenged is retrievable from PACER through automated, computerized means (just like information establishing the existence of a filed petition for a Chapter 7 no asset bankruptcy, a discharge order granting that petition and the date of such discharge). Thus, were Equifax to employ procedures of which they are fully aware, Equifax could achieve close to 100 percent accuracy in the reporting of the status of pre-bankruptcy debts.

78.  Equifax, however, has failed to reasonably use available procedures including, but not limited to, services within PACER, to determine which dischargeable debts have, in fact, been discharged and which, if any, remain due and owing on account of their having been reaffirmed or successfully challenged in an adversary proceeding. Instead, Equifax reports information regarding pre-bankruptcy debts furnished by consumers' creditors, even if that information ignores or contradicts information contained in public court records that Equifax has obtained or could easily have obtained through PACER.

79.  One of the most serious consumer reporting problems in recent years was the failure of the reporting system to provide consumers a "fresh start" after a bankruptcy discharge. Creditors frequently fail to report an updated status for discharged accounts or continue to report their pre-discharge status and balance. CRAs did not update accounts and judgments they otherwise knew had been discharged.[2]

---

[2]  *Acosta v. Trans Union*, 243 F.R.D. 377, at n.3 (C.D. Cal. 2007) (bankruptcy lawyer's survey of approximately 900 clients found that 64% of Trans Union

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

80. The failure and further refusal to update credit report tradelines for many thousands of consumers to reflect that their debts were, in fact, discharged in Bankruptcy, as opposed to reporting a *current* pay status of "charged off" or "past due", runs afoul to Section 727 of the Bankruptcy Code and *The* primary purpose of the protection offered by the Bankruptcy Code—the discharge of a debt. *Marrama v. Citizens Bank of Massachusetts*, 549 U.S. 365, 367 (2007).

81. As a result of a major class action settlement in 2008, the three nationwide CRAs, including Equifax, have been required to revise their procedures as to how they report debts discharged in a chapter 7 bankruptcy.[3] The settlements essentially reverse the presumption of non-dischargeability that the CRAs had been applying to chapter 7 bankruptcies. They require the CRAs to treat all prebankruptcy debts as discharged, unless furnishers provide information showing that a debt was excludable from discharge. The CRAs are to no longer report as charged off or placed in collection debts that in fact have been discharged in bankruptcy.

///
///
///
///
///

---

reports and 66% of Equifax reports erroneously list one or more discharged debts as due and owing); *White v. Trans Union*, 462 F. Supp. 2d 1079 (C.D. Cal. 2006) (same survey; number of incorrectly reported discharged debts was between three and four per consumer for Trans Union reports, with some consumers having as many as ten or more errors).

[3] *White v. Experian Info. Solutions, Inc.*, Case No. CV 05-01070 (C.D. Cal. Aug. 19, 2008) (lead case number); *White v. Equifax Info. Serv.*, L.L.C., Case. No. CV 05-7821 (C.D. Cal. Aug. 19, 2008); *White v. Trans Union*, L.L.C., Case No. CV 05-1073 (Aug. 19, 2008); *Hernandez v. Equifax Info. Serv.*, L.L.C., Case. No. CV 06-3924 (C.D. Cal. Aug. 19, 2008).

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

82. These procedures rely on the fact that furnishers are contractually obligated to report debts with codes that correspond to the major categories of non-dischargeable debt (that is, student loans, unpaid taxes, domestic support obligations, and debts subject to reaffirmation agreements). Using what is termed an "Agreed Bankruptcy Coding," the CRAs are to set to zero the stated balance owed for other debts—those that usually are dischargeable—*and* show them as having been discharged. This whole process is easily automated because the CRAs normally can ascertain from the information in their own credit files when a consumer's prebankruptcy debt has not in fact been discharged.

83. These revised procedures and assumptions were applied both retroactively *and* prospectively. With respect to current credit files, the three major CRAs were directed to retroactively "scrub" existing data to remove improper tradelines and civil judgments.

84. Despite this reform, there continue to be problems with improper reporting of discharged debts, including allegations that creditors have deliberately engaged in the practice to in order to pressure debtors to pay off discharged debts, and even refusals to correct the reporting after being requested to do so by the debtor.[4]

/// 

///

---

[4] *See, e.g.*, *Belton v. GE Capital Consumer Lending* (*In re Belton*), 2014 WL 5819586 (Bankr. S.D.N.Y. Nov. 10, 2014). *See also* Jessica Silver Greenberg, Debts Canceled by Bankruptcy Still Mar Consumer Credit Scores, N.Y. Times, Nov. 12, 2014. *Keil v. Equifax Info. Serv.*, 2014 WL 4477610 (N.D. Cal. Sept. 10, 2014) (in response to debtor's dispute, credit union stated its policy was to report all charged-off debts as unpaid, irrespective of bankruptcy discharge); *In re Haynes*, 2014 WL 3608891 (Bankr. S.D.N.Y. July 22, 2014) (debtor alleged that creditor refused his request to remove charge-off notation from account discharged in bankruptcy).

---

85. Equifax knows or should know that the Credit Reports they have issued regarding Plaintiff and the Class are grossly inaccurate with respect to the status of pre-bankruptcy debts. Over the years, Equifax has received thousands of dispute letters from consumers informing them that they have erroneously recorded one or more of their pre-bankruptcy debts as due and owing on Equifax's credit reports. Moreover, many of these consumers have brought suit against Equifax, including previous class actions referenced in this Complaint, seeking damages and other relief based on the same inaccurate reporting procedures that are being challenged here.

86. Equifax, therefore, know or should know that their procedures for reporting the status of pre-bankruptcy debts fail to assure maximum possible accuracy. Despite knowing that their procedures contravene the statutory rights of consumers or in reckless disregard of whether they contravene those rights, Equifax continues to employ inaccurate reporting procedures.

87. Equifax has also failed to fulfill their legal and statutory obligation to reasonably reinvestigate and correct the status of the discharged debts they have falsely reported as due and owing. Equifax's practices regarding the reinvestigation of those debts are woefully inadequate.

88. Over the past several years, thousands of consumers have written dispute letters to Equifax requesting that Equifax correct their erroneous reporting of discharged debts as due and owing because those debts had, in fact, been discharged in bankruptcy. Upon information and belief, in response to such disputes, Equifax frequently continued to falsely report those debts as due and owing, despite the fact that the bankruptcy court records show that the debts at issue had been discharged.

///

///

///

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

---

89. By failing to adopt and maintain reasonable reinvestigation practices for correcting the erroneous information they record in their Credit Reports concerning the status of discharged debts of individuals with court-approved bankruptcy petitions, Equifax has acted in willful and reckless disregard of their rights and obligations under the FCRA.

90. As a direct consequence of Equifax's grossly inadequate and inaccurate initial reporting and reinvestigation practices and procedures, Plaintiff and the Class have been effectively denied the fresh start to which they are legally entitled under the U.S. Bankruptcy Code.

91. In enacting the FCRA, Congress identified individual interests that the increased use of credit reporting agencies stood to jeopardize, including interests in privacy and economic self-determination. Congress created individual statutory rights in the FCRA to enforce those interests.

92. As a direct consequence of Equifax's grossly inadequate and inaccurate reporting and reinvestigation practices and procedures, Plaintiff and the Class have been effectively denied the protection Congress intended to afford consumers from inaccurate or arbitrary information in consumer reports that are used as a factor in determining individuals' eligibility for credit, insurance or employment.

93. In each case described above, Plaintiff and the Class members' legally protected interests in being able to apply for credit based on accurate information have been violated, placing them at an increased risk of not being able to obtain valuable credit and in many cases adversely affecting their credit ratings. Equifax's publication of false and potentially damaging credit information concerning the Plaintiff and the Class violates their statutorily mandated rights and has caused them particularized and concrete harm.

///

///

## BANKRUPTCY ALLEGATIONS RELATING TO KELLIE GADOMSKI

94. At all times relevant to this matter, Plaintiff was an individual residing within the State of California.

95. Furthermore, Equifax conducted business within the State of California at all times relevant.

96. On or about April 24, 2013, Plaintiff filed for a no asset Chapter 7 bankruptcy in the U.S. Bankruptcy Court for the Eastern District of California in Fresno. Plaintiff's case was assigned Case Number 13-bk-25655 (the "Bankruptcy").[5]

97. The obligations ("Debt") to Wells Fargo for a consumer credit card were scheduled in the Bankruptcy.

98. Wells Fargo did not have their Debt ordered to be "non dischargeable" pursuant to 11 U.S.C. § 523 *et seq*.

99. Wells Fargo also did not request relief from the "automatic stay" codified at 11 U.S.C. §362 *et seq.*, which prohibits creditors included in a consumer's bankruptcy from engaging in collection activities, while the Plaintiff's Bankruptcy was pending to pursue the Plaintiff on any *personal* liability for any of the underlying Debts.

100. Wells Fargo also did not request or receive relief from the "automatic stay" codified at 11 U.S.C. §362 *et seq.* while the Plaintiff's Bankruptcy was pending to pursue the Plaintiff for any of the underlying Debts in their pre-bankruptcy form.

101. Accordingly, the Debt to Wells Fargo was discharged through the Bankruptcy.

///

///

///

---

[5] The District Court has discretion to take judicial notice of the documents electronically filed in the bankruptcy case. *See, Atwood v. Chase Manahttan Mortg. Co. (In re Atwood)*, 293 B.R. 227, 233 n.9 (B.A.P. 9th Cir.2003).

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

102. Further, while the automatic stay was in effect during the Bankruptcy, it was illegal and inaccurate for Wells Fargo to report any post-Bankruptcy derogatory collection information, which was inconsistent with the Bankruptcy Orders entered by the Bankruptcy Court, including the initial Petition for Relief for Bankruptcy protection, the automatic stay, and the Discharge Order (collectively the "Bankruptcy Orders).

103. Reporting credit information to a CRA is a collection activity.

104. Wells Fargo either reported or caused to be reported inaccurate information after the Bankruptcy was filed *and* discharged, in the form of reporting the *current* account (pay) status of the Debt as being "charged off", as opposed to "Discharged in Bankruptcy" (or the equivalent).

105. The derogatory information reported by Wells Fargo after the Bankruptcy was discharged indicates to potential creditors that the Debt was somehow not discharged in the Bankruptcy and Plaintiff was being actively delinquent in respect to Wells Fargo Debt, which is inaccurate and materially misleading reporting.

106. Wells Fargo's attempt to collect upon their respective Debt by reporting post-Bankruptcy derogatory information on Plaintiff's Equifax Credit Report, which is a collection activity, was therefore inaccurate and prohibited by the Bankruptcy discharge.

107. Wells Fargo's reporting of post-Bankruptcy derogatory information was also inaccurate because a default on an account included in a bankruptcy can occur no later than the bankruptcy filing date, at which point the accounts included in the Bankruptcy were no longer collectable due to the effect of the automatic stay and ultimate discharge.

///

///

///

108. Thus, by reporting post-Bankruptcy derogatory information, Wells Fargo effectively reported: (1) Plaintiff was being financially irresponsible by failing to pay the debt *after* the Bankruptcy was discharged; and (2) that Plaintiff's Debt was more recently subject to collection than it really was, which is inaccurate and misleading under the FCRA.

109. Wells Fargo's attempt to collect upon the Debt by reporting post-Bankruptcy derogatory information on Plaintiff's Equifax Credit Report, which is a collection activity, was therefore inaccurate and materially misleading.

110. Wells Fargo's reporting of post-Bankruptcy derogatory information was also inaccurate and materially misleading because Wells Fargo continued reporting information based on Wells Fargo's pre-bankruptcy contract terms with the Plaintiff, which were no longer enforceable upon the filing of the Bankruptcy and ultimate successful discharge, thereby rendering the disputed information inaccurate and materially misleading.

111. For decades, courts have recognized that when a bankruptcy discharge is granted, the order relates back to the date of filing the petition and relieves the debtor from personal liability as of this date.

112. This is because when a debtor voluntarily files for bankruptcy, the petition constitutes an "order for relief" under the particular chapter the debtor wishes to proceed per Bankruptcy Code 11 U.S.C. § 301(a)-(b).

113. When a debtor such as Plaintiff files a Chapter 7 petition, Section 727(b) of the Bankruptcy Code provides that the discharge, when entered, applies to "all debts that arose *before the date of the order for relief*." In other words, the discharge relieves the debtor of personal liability for all prepetition debts.

114. Thus, in relation to the FCRA, the discharge order rendered the information reported by Wells Fargo following the bankruptcy discharge inaccurate and patently misleading because the discharge order relieved Plaintiff from any personal obligation to pay Wells Fargo as of the date of filing the Bankruptcy

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

petition—April 24, 2013.

115. Moreover, the derogatory, delinquent information furnished by Wells Fargo following the Bankruptcy Discharge was inaccurate and misleading because end users, including potential creditors, may interpret the reported information to mean that Plaintiff incurred new debt during the Bankruptcy or that Plaintiff reaffirmed the Debt with Wells Fargo notwithstanding the discharge.

116. However, Plaintiff did not incur new debt with Wells Fargo during the pendency of the Bankruptcy or reaffirm the Debt in the Bankruptcy.

**EQUIFAX'S PRODUCTION OF ERRONEOUS CREDIT REPORTS RELATING TO KELLIE GADOMSKI'S WELLS FARGO ACCOUNT NO. 57744216\* (THE "ACCOUNT")**

117. On or about September 2009, Plaintiff opened the Account with Wells Fargo, which was for a consumer credit card.

118. On or about 2012, Plaintiff fell behind on her payments and Wells Fargo ultimately "Charged Off" the Account on or about August 2012.

119. In an Equifax Credit Report dated November 13, 2016, Wells Fargo reported the following inaccurate, derogatory information for the above-referenced account number as of December 2012:

- Current (Pay) Status – Charged Off
- Charge Off Amount: $587

120. Although it was "accurate" for Wells Fargo to report that the Account was previously "Charged Off" as a *historical* fact, it was inaccurate and materially misleading to report that the *current* pay status of the Account was "Charged Off", because the true and correct statuses of the Accounts were "Discharged in Bankruptcy" as of August 23, 2013.

121. There was no notation, status update, or any other indication in the tradeline that the Account was discharged in Plaintiff's Bankruptcy.

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

122. Again, the Account in question was not subject to a reaffirmation agreement with Wells Fargo or a successful adversary proceeding brought by Wells Fargo, but rather was successfully discharged through Plaintiff's Bankruptcy. Therefore, in all material respects, Plaintiff's "Charged Off" Account is an example of an incorrect status notation on her credit report that is suffered by all the Class Members.

123. For the reasons stated in more detail above, it was inaccurate and misleading for Wells Fargo to report derogatory information on Plaintiff's account after April 24, 2013, because Plaintiff filed for bankruptcy on April 24, 2013.

124. Wells Fargo and Equifax's inaccurate and negative reporting damaged Plaintiff's creditworthiness.

125. Equifax failed to report the Bankruptcy in the "Public Records" section of Plaintiff's credit report, even though Equifax, as part of its regular policies and procedures, utilized the computerized court reporting service known as PACER to regularly obtain access to each and every discharge order issued by a U.S. Bankruptcy Court in Chapter 7 proceedings. They similarly obtain from a consumer's bankruptcy schedules other specific information including dates of filing and discharge, total liabilities and total exemptions, and even the identity of the debtor's attorney. In Plaintiff's case and those similarly situated, however, Equifax did not accurately record this information and those orders in the public records section of their Credit Reports.

126. Equifax is well aware that the effect of a discharge order in a no asset bankruptcy under Chapter 7 is to discharge all statutorily dischargeable debts other than those that have been reaffirmed in a reaffirmation agreement or successfully challenged in an adversary proceeding. Information relating to whether a debt has been reaffirmed or successfully challenged is retrievable from PACER through automated, computerized means (just like information establishing the existence of a filed petition for a Chapter 7 no asset

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

bankruptcy, a discharge order granting that petition and the date of such discharge). Thus, were Equifax to employ procedures of which they are fully aware, Equifax could achieve close to 100 percent accuracy in the reporting of the status of pre-bankruptcy debts.

127. Because Equifax failed to employ proper procedures to realize Plaintiff's debt was subject to bankruptcy Equifax erroneously listed Plaintiff's discharged debt as due and owing or in an inaccurate charge off status.

128. Plaintiff incurred monetary expenses, time, and effort in an attempt to dispute and seek correction of the inaccuracies on Equifax's Credit Report.

129. Following the date of her discharge, Plaintiff's statutory right to be able to apply for credit based on accurate information has been violated, placing her at increased risk of not being able to obtain valuable credit and adversely affecting her credit rating.

130. Plaintiff's credit standing was worsened by Equifax's failure to report Plaintiff's bankruptcy because Plaintiff's debts continued to appear as outstanding and owing as opposed to discharged through bankruptcy.

131. Accordingly, Equifax failed to follow reasonable procedures to assure maximum possible accuracy of the information concerning Plaintiff and violated 15 U.S.C. § 1681e(b).

132. Plaintiff incurred monetary expenses, time, and effort in an attempt to dispute and seek correction of the inaccuracies on Equifax's Credit Report.

133. On or about November 2016, Plaintiff disputed Wells Fargo's reported information regarding the Debt pursuant to 15 U.S.C. § 1681i(a)(2) by notifying Equifax, in writing, of the incorrect and inaccurate credit information furnished by Wells Fargo.

134. Specifically, Plaintiff sent a letter, via certified mail, to Equifax (the "Equifax Dispute Letter"), requesting the above inaccurate information be removed.

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

135. Upon information and belief, Equifax timely notified Wells Fargo of Plaintiff's dispute, but Wells Fargo continued reporting inaccurate, derogatory information.

136. Wells Fargo was required to conduct a reasonable investigation into this specific account on Plaintiff's consumer report pursuant to 15 U.SC. § 1681s-2(b)(1)(A).

137. Equifax was required to conduct a reasonable reinvestigation into this specific account on Plaintiff's consumer report pursuant to 15 U.S.C. §1681i.

138. On or about December 15, 2016, Plaintiff received notification from Equifax that Wells Fargo and Equifax received notice of Plaintiff's dispute pursuant to 15 U.S.C. § 1681i(a)(6) and were providing the results of the reinvestigation.

139. However, rather than remove all the above inaccurate and materially misleading, derogatory information from Plaintiff's report, Equifax simply left inaccurate and materially misleading information on Plaintiff's report.

140. Specifically, Equifax continued to report the following inaccurate and derogatory information for the Account on Plaintiff's Equifax Credit Report:

    • Current (Pay) Status – Charged Off

141. Following Equifax's FCRA investigation, there was again no notation, status update, or any other indication in the tradeline or in the "Public Information" section of Equifax's Credit Report that the Account was discharged in Plaintiff's Bankruptcy.

142. Therefore, end users, including potential creditors, would continue to unfairly interpret that the "*Current* Pay Status" of the Account was "Charged Off", as opposed to "Discharged in Bankruptcy", which is inaccurate and materially misleading under the FCRA for the reasons discussed.

///

///

///

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

143. Upon information and belief, Equifax's investigation was not reasonable. More specifically, Equifax should have discovered from its records, including Plaintiff's official Equifax Dispute letter, that the information Equifax was reporting was inaccurate and materially misleading. After all, Equifax could have easily ascertained that the Account was included and discharged in Plaintiff's Bankruptcy by reviewing Plaintiff's public bankruptcy records cited in Plaintiff's Dispute Letter. Therefore, it would be erroneous to list Plaintiff's discharged debt as due and owing or in an inaccurate charge off status and continue to fail to report Plaintiff's Bankruptcy in the "Public Records" section of Plaintiff's Equifax Credit Report.

144. A reasonable investigation would have also led to Equifax consulting with the CRRG's Metro 2 instructions to determine the accurate and proper reporting of the current pay status of the Accounts, which would have revealed that Equifax should have reported the CII status as "Discharged in Bankruptcy."

145. A reasonable investigation would have also led Equifax consulting with PACER to determine that Plaintiff had a successful bankruptcy discharge.

146. Instead, Equifax "double-downed" on their original inaccurate and misleading reporting by reporting that the current (pay) status of the Account, following their November/December 2016 FCRA investigation, was "Charged Off", as opposed to "Discharged in Bankruptcy" (or the equivalent) and failing to report Plaintiff's bankruptcy in the "Public Records" section of Plaintiff's Equifax Report.

147. Accordingly, Equifax failed to follow reasonable procedures to assure maximum possible accuracy of the information concerning Plaintiff and violated 15 U.S.C. § 1681e(b).

148. Accordingly, Equifax failed to conduct a reasonable investigation with respect to the disputed information as required by 15 U.S.C. §1681i.

---

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

149. Plaintiff's continued efforts to correct Equifax's erroneous and negative reporting of the Debt by communicating Plaintiff's dispute with Equifax were fruitless.

150. Equifax's continued inaccurate and negative reporting of the Debt in light of its knowledge of the actual error was willful.

151. Equifax's failure to correct the previously disclosed inaccuracies on Plaintiff's credit report was intentional and in reckless disregard of its duty to refrain from reporting inaccurate information. Accordingly, Equifax willfully and negligently failed to comply with its duty to reasonably investigate Plaintiff's dispute.

152. Equifax's inaccurate and negative reporting damaged Plaintiff's creditworthiness.

### CLASS ALLEGATIONS

153. Plaintiff seeks to maintain this action as a class action (including, any appropriate subclasses) representing a class (the "Class") consisting of the following:

> All individuals who, on or after February 2012 have had a consumer report relating to them prepared by Equifax in which one or more of their tradeline accounts or debts was not reported as discharged despite the fact that such debts had been discharged as a result of their bankruptcy under Chapter 7 and Chapter 13 of the Bankruptcy Code.

154. This suit seeks only damages and injunctive relief for recovery of economic injury on behalf of the Class, and it expressly is not intended to request any recovery for personal injury and claims related thereto. Plaintiff reserves the right to expand the Class definition to seek recovery on behalf of additional persons as warranted as facts are learned in further investigation and discovery.

///

///

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

155. <u>Ascertainability/Numerosity</u>: The Class is ascertainable in that it is comprised of individuals who can be identified by reference to purely objective criteria. Plaintiff does not know the number of members in the Class, but believes the Class members number in the hundreds of thousands, if not more. Thus, this matter should be certified as a Class action to assist in the expeditious litigation of this matter.

156. <u>Typicality</u>: The claims of the named Plaintiff is typical of the claims of each member of the Class they seek to represent because: (1) they have all been injured in the same manner as a result of Equifax's uniform and woefully inadequate procedure regarding the reporting of debts that have been discharged in bankruptcy; and (2) their claims are all based on the same legal theory.

157. <u>Adequacy of Representation</u>: Plaintiff is an adequate representative of the class they seek to represent because: (a) she is willing and able to represent the proposed class and has every incentive to pursue this action to a successful conclusion; (b) her interests are not in any way antagonistic to those of the other class members; and (c) she is represented by counsel experienced in litigating major class actions and claims under the FCRA and other consumer protection statutes.

158. <u>Commonality</u>: There are questions of law and fact common to all members of the Class. The overarching questions of law and fact that are common to all members of the Class are whether: (a) in preparing consumer reports concerning individuals whose debts have been discharged in bankruptcy, Equifax has failed to follow reasonable procedures to assure maximum possible accuracy of the information pertaining to the status of those debts in accordance with the requirements of 15 U.S.C. § 1681e(b); (b) Equifax's failure to comply with the requirements of 15 U.S.C. § 1681e(b) is negligent pursuant to 15 U.S.C. § 1681o(a); and (c) Equifax's failure to comply with the

requirements of 15 U.S.C. § 1681e(b) is willful pursuant to 15 U.S.C. § 1681n(a).

159. Propriety of Class Certification: Under Fed. R. Civ. P. 23(b)(3). Class certification of Plaintiff's claims for willful failure to employ reasonable reporting procedures in violation of 15 U.S.C. § 1681e(b) is also appropriate under Fed. R. Civ. P. 23(b)(3). The common questions of law and fact relating to Plaintiff's willful violation claims predominate over questions affecting only individual members. Moreover, the class action vehicle is superior to other available methods for the fair and efficient adjudication of these claims. For the vast majority of members of the Class, the amount of any potential recovery is too small to justify the cost of prosecuting their claims individually, despite the availability of costs and attorney fees in the event they were to prevail on the merits. Further, requiring each Class member to pursue his or her claim individually would entail needless duplication of effort, would waste the resources of both the parties and the Court, and would risk inconsistent adjudications.

**DISPUTE SUBCLASS ALLEGATIONS**

160. Plaintiff also seeks to maintain this action on behalf of a subclass consisting of the following Dispute Subclass:

> All individuals included in the Class described above whose discharged debts continued to be erroneously reported by Equifax as due and owing any time after 30 days from the date that Equifax had received a dispute letter informing them that those debts had, in fact, been discharged.

161. Ascertainability/Numerosity: The Dispute Subclass is ascertainable in that it is comprised of individuals who can be identified by reference to purely objective criteria. There are thousands of members of the Subclass and, therefore, it would be impracticable to bring all, or even a substantial percentage of, such persons before the Court as individual plaintiffs.

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT DI
COSTA MESA, CA 92626

162. <u>Typicality</u>: Plaintiff's claims are typical of the claims of each member of the Dispute Subclass because: (1) they have all been injured in the same manner as a result of Equifax's uniform and woefully inadequate reinvestigation procedures regarding the reporting of debts that have been discharged in bankruptcy; and (2) their claims are all based on the same legal theory.

163. <u>Adequacy of Representation</u>: Plaintiff is an adequate representatives of the Subclass she seeks to represent because: (a) she is willing and able to represent the proposed subclass and has every incentive to pursue this action to a successful conclusion; (b) her interests are not in any way antagonistic to those of the other Subclass members; and (c) she is represented by counsel experienced in litigating major class actions and claims under the FCRA and other consumer protection statutes.

164. <u>Commonality</u>: There are questions of law and fact common to all members of the Subclass. The overarching questions of law and fact that are common to all members of the Subclass are whether: (a) in responding to dispute letters ofindividuals whose debts have been discharged in bankruptcy, Equifax has violated 15 U.S.C. § 1681i(a) by failing to follow reasonable reinvestigation procedures for ascertaining the accuracy of information pertaining to those debts in its credit reports; (b) Equifax's failure to comply with the requirements of 15 U.S.C. § 1681i(a) is negligent pursuant to 15 U.S.C. § 1681o(a); and, (c) Equifax's failure to comply with the requirements of 15 U.S.C. § 1681i(a) is willful pursuant to 15 U.S.C. § 1681n(a).

165. <u>Propriety of Class Certification Under FED. R. CIV. P. 23(b)(3)</u>. Class certification of the Subclass' claims for willful failure to employ reasonable reinvestigation procedures in violation of 15 U.S.C. § 1681e(b) is appropriate under FED. R. CIV. P. 23(b)(3). The common questions of law and fact relating to the Subclass' willful violation claims predominate over questions affecting only individual members. Moreover, the class action vehicle is

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

superior to other available methods for the fair and efficient adjudication of the claims of members of the proposed subclass. For the vast majority of members of the Subclass, the amount of any potential recovery is too small to justify the cost of prosecuting their claims individually, despite the availability of costs and attorney fees in the event they were to prevail on the merits. Furthermore, requiring each Subclass member to pursue his or her claim individually would entail needless duplication of effort, would waste the resources of both the parties and the Court, and would risk inconsistent adjudications.

### PUBLIC RECORD SUBCLASS ALLEGATIONS

166. Plaintiff also seeks to maintain this action on behalf of a subclass consisting of the following Public Record Subclass:

> All individuals included in the Class and Subclass described above whose record of Chapter 7 or 13 Bankruptcies fail to report in the "Public Records" section of Equifax's credit reports any time, including after 30 days from the date that Equifax had received a dispute letter informing them that those Bankruptcies had, in fact, occured.

167. Ascertainability/Numerosity: The Public Record Subclass is ascertainable in that it is comprised of individuals who can be identified by reference to purely objective criteria. There are thousands of members of the Subclass and, therefore, it would be impracticable to bring all, or even a substantial percentage of, such persons before the Court as individual plaintiffs.

168. Typicality: Plaintiff's claims are typical of the claims of each member of the Public Record Subclass because: (1) they have all been injured in the same manner as a result of Equifax's uniform and woefully inadequate initial procedures and reinvestigation procedures regarding the reporting of bankruptcies in the public records section of Equifax's Credit Reports and (2) their claims are all based on the same legal theory.

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

169. <u>Adequacy of Representation</u>: Plaintiff is an adequate representatives of the Subclass she seeks to represent because: (a) she is willing and able to represent the proposed subclass and has every incentive to pursue this action to a successful conclusion; (b) her interests are not in any way antagonistic to those of the other Subclass members; and (c) she is represented by counsel experienced in litigating major class actions and claims under the FCRA and other consumer protection statutes.

170. <u>Commonality</u>: There are questions of law and fact common to all members of the Class. The overarching questions of law and fact that are common to all members of the Class are whether: (a) in preparing consumer reports concerning individuals who received successful bankruptcy discharges, Equifax has failed to follow reasonable procedures to assure maximum possible accuracy of the information pertaining to the reporting of such successful bankruptcies in accordance with the requirements of 15 U.S.C. § 1681e(b); (b) Equifax's failure to comply with the requirements of 15 U.S.C. § 1681e(b)  is negligent pursuant to 15 U.S.C. § 1681o(a); (c) Equifax's failure to comply with the requirements of 15 U.S.C. § 1681e(b) is willful pursuant to 15 U.S.C. § 1681n(a); (d) in responding to dispute letters of individuals who received successful bankruptcy discharges, Equifax has violated 15 U.S.C. § 1681i(a) by failing to follow reasonable reinvestigation procedures for ascertaining the accuracy of information pertaining to those bankruptcies in its credit reports; (e) Equifax's failure to comply with the requirements of 15 U.S.C. § 1681i(a) is negligent pursuant to 15 U.S.C. § 1681o(a); and, (f) Equifax's failure to comply with the requirements of 15 U.S.C. § 1681i(a) is willful pursuant to 15 U.S.C. § 1681n(a).

///

///

///

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

171. Propriety of Class Certification Under FED. R. CIV. P. 23(b)(3). Class certification of the Subclass' claims for willful failure to employ reasonable reinvestigation procedures in violation of 15 U.S.C. § 1681e(b) is appropriate under FED. R. CIV. P. 23(b)(3). The common questions of law and fact relating to the Subclass' willful violation claims predominate over questions affecting only individual members. Moreover, the class action vehicle is superior to other available methods for the fair and efficient adjudication of the claims of members of the proposed subclass. For the vast majority of members of the Subclass, the amount of any potential recovery is too small to justify the cost of prosecuting their claims individually, despite the availability of costs and attorney fees in the event they were to prevail on the merits. Furthermore, requiring each Subclass member to pursue his or her claim individually would entail needless duplication of effort, would waste the resources of both the parties and the Court, and would risk inconsistent adjudications.

### FIRST CAUSE OF ACTION

**Willful Failure to Employ Reasonable Procedures to Assure Maximum Possible Accuracy of Credit Reports in Violation of 15 U.S.C. § 1681e(b)**

**(On behalf of all Plaintiff and Class Members)**

172. The allegations set forth in the paragraphs above are realleged and incorporated by reference as if fully set forth here.

173. Equifax is regularly engaged in the practice of assembling and evaluating consumer credit information for the purpose of preparing consumer reports, as that term is defined in 15 U.S.C. § 1681a(d), commonly referred to as Credit Reports, and furnishing these Credit Reports to third parties.

///

///

174. Equifax uses means and facilities of interstate commerce for the purpose of preparing and furnishing Credit Reports and, hence, are "consumer reporting agencies" within the meaning of 15 U.S.C. § 1681a(f).

175. In preparing Credit Reports, Equifax has failed to use reasonable procedures to, as required by law, "assure maximum possible accuracy" of information relating to the discharged debts of Plaintiff and the Class, in violation of 15 U.S.C. § 1681e(b).

176. As a result of Equifax's failure to use reasonable procedures in accordance with the requirements of 15 U.S.C. § 1681e(b), Equifax has erroneously reported as due and legally owed one or more of the discharged debts of each Plaintiff and member of the Class.

177. Equifax's failure to comply with the requirements of 15 U.S.C. § 1681e(b) is willful within the meaning of 15 U.S.C. § 1681n(a).

178. As a result of Equifax's willful noncompliance with the requirements of 15 U.S.C. § 1681e(b), Plaintiff and Class Members are entitled to statutory and punitive damages under 15 U.S.C. § 1681n(a)(1) and (a)(2). As a further result of Equifax's willful noncompliance with the requirements of 15 U.S.C. § 1681e(b) Plaintiff's and Class Members' statutory rights to be able to apply for credit based on accurate information have been violated, placing them at increased risk of not being able to obtain valuable credit and adversely affecting their credit ratings and causing other actual damages.

**SECOND CAUSE OF ACTION**

**Negligent Failure to Employ Reasonable Procedures to Assure Maximum Possible Accuracy of Credit Reports in Violation of 15 U.S.C. § 1681e(b)**

**(On behalf of all Plaintiff and Subclass Members)**

179. The allegations set forth in the paragraphs above are realleged and incorporated by reference as if fully set forth here.

180. In preparing credit reports relating to Plaintiff and Class Members, Equifax has failed to follow reasonable procedures to assure maximum accuracy of information they put in Credit Reports in violation of 15 U.S.C. § 1681e(b).

181. As a result of Equifax's failure to follow reasonable procedures in accordance with the requirements of 15 U.S.C. § 1681e(b), Equifax has erroneously reported one or more of the discharged debts of Plaintiff and Class Members as due and legally owed in Credit Reports and failed to report the public record of the bankruptcy itself.

182. Equifax's failure to comply with the requirements of 15 U.S.C. § 1681e(b) is negligent within the meaning of 15 U.S.C. § 1681o(a).

183. As a result of Equifax's negligent violation of the requirements of 15 U.S.C. § 1681e(b), Plaintiff and Class Members statutory rights to be able to apply for credit based on accurate information have been violated, placing them at increased risk of not being able to obtain valuable credit and adversely affecting their credit ratings and causing other actual damages.

### THIRD CAUSE OF ACTION

**Willful Failure to Reasonably Reinvestigate
in Violation of 15 U.S.C. § 1681i(a)**

**(On behalf of all Plaintiff and All Subclass Members)**

184. The allegations set forth in the paragraphs above are realleged and incorporated by reference as if fully set forth here.

185. Equifax has failed to use reasonable reinvestigation practices for ascertaining the accuracy of information relating to the discharged debts and public record of bankruptcies of Plaintiff and Subclass members that Equifax has erroneously reported as due legally owing in Credit Reports.

///

///

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

186. As a result of Equifax's failure to conduct reasonable reinvestigations in accordance with the requirements of 15 U.S.C. § 1681i(a)(1), Equifax has continued to erroneously report the discharged debts of Plaintiff and Subclass members as due and legally owing in their Credit Reports relating to Plaintiff and Subclass Members and the fact that the bankruptcy discharge occurred, after having been notified that they are disputing that information.

187. Equifax's failure to comply with the requirements of 15 U.S.C. § 1681i(a)(1) is willful within the meaning of 15 U.S.C. § 1681n(a).

188. As a result of Equifax's willful noncompliance with the requirements of 15 U.S.C. § 1681i(a)(1), Plaintiff and Subclass members are entitled to statutory and punitive damages under 15 U.S.C. § 1681n(a)(1) and (a)(2).

189. As a further result of Equifax's willful noncompliance with the requirements of 15 U.S.C. § 1681i(a)(1), Plaintiff and Subclass Members have suffered damage to their credit ratings and other actual damages.

### FOURTH CAUSE OF ACTION

### Negligent Failure to Reasonably Reinvestigate in Violation of 15 U.S.C. § 1681i(a)

### (On behalf of all Plaintiff and All Subclass Members)

190. The allegations set forth in the paragraphs above are realleged and incorporated by reference as if fully set forth here.

191. Equifax has failed to use reasonable reinvestigation practices for ascertaining the accuracy of information relating to the discharged debts and public record of bankruptcies of Plaintiff and Subclass members that Equifax has erroneously reported as due legally owing in Credit Reports.

///

///

///

---

192. As a result of Equifax's failure to conduct reasonable reinvestigations in accordance with the requirements of 15 U.S.C. § 1681i(a)(1), Equifax has continued to erroneously report the discharged debts of Plaintiff and Subclass members as due and legally owing in their Credit Reports relating to Plaintiff and Subclass Members and the fact that the bankruptcy discharge occurred, after having been notified that they are disputing that information.

193. Equifax's failure to comply with the requirements of 15 U.S.C. § 1681i(a)(1) is negligent within the meaning of 15 U.S.C. § 1681o(a).

194. As a result of Equifax's negligent noncompliance with the requirements of 15 U.S.C. § 1681i(a)(1), Plaintiff and Subclass Members' statutory rights to be able to apply for credit based on accurate information have been violated, placing them at increased risk of not being able to obtain valuable credit and adversely affecting their credit ratings and causing other actual damages.

195. Plaintiff and Subclass members are entitled to statutory and punitive damages under 15 U.S.C. § 1681n(a)(1) and (a)(2).

196. As a further result of Equifax's willful noncompliance with the requirements of 15 U.S.C. § 1681i(a)(1), Plaintiff and Subclass Members have suffered damage to their credit ratings and other actual damages.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff and The Class Members pray for judgment as follows:

- That the practices and procedures of Equifax complained of herein be determined and adjudged to be in violation of the rights of Plaintiff and Class and Subclass members under the FCRA;

- That the Court enter an Order certifying the claims of the Class and Subclass for violation of the FCRA under FED. R. CIV. P. 23(b)(3);

///

///

///

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

- That, in accordance with 15 U.S.C. §§ 1681n(a) and 1681o(a), judgment be entered in favor of Plaintiff and the Class and Subclass, either individually or class-wide, and against Equifax for statutory and/or punitive damages in amounts to be determined at trial;

- That, in accordance with 15 U.S.C. §§ 1681n(a)(3) and 1681o(a)(2), Plaintiff and the Class and Subclass be awarded the costs of this action together with reasonable attorney's fees as the Court may determine;

- That Plaintiff and the Class and Subclass members be awarded such other and further legal and equitable relief as may be found appropriate and as the Court may deem equitable and just.

Dated: March 29, 2017                    Respectfully submitted,

**KAZEROUNI LAW GROUP, APC**

By:    /s/ Matthew M. Loker
MATTHEW M. LOKER, ESQ.
ATTORNEY FOR PLAINTIFF

### TRIAL BY JURY

197. Pursuant to FED. R. CIV. P. 38, Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: March 29, 2017                    Respectfully submitted,

**KAZEROUNI LAW GROUP, APC**

By:    /s/ Matthew M. Loker
MATTHEW M. LOKER, ESQ.
ATTORNEY FOR PLAINTIFF

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626