MATTHEW H. DAWSON (State Bar No. 307350)
mdawson@kslaw.com
KING & SPALDING LLP
601 South California Avenue
Palo Alto, CA 94304
Telephone:    +1 650 422 6700
Facsimile:    +1 650 422 6800

ZACHARY A. MCENTYRE (*pro hac vice*)
zmcentyre@kslaw.com
MISTY L. PETERSON (*pro hac vice*)
mpeterson@kslaw.com
BILLIE B. PRITCHARD (*pro hac vice* pending)
bpritchard@kslaw.com
KING & SPALDING LLP
1180 Peachtree Street NE
Atlanta, GA 30309
Telephone:    +1 404 572 4600
Facsimile:    +1 404 572 5100

Attorneys for Defendant EQUIFAX INFORMATION
SERVICES LLC

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KELLIE GADOMSKI, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>    v.<br><br>EQUIFAX INFORMATION SERVICES LLC,<br><br>        Defendant. | Case No. 2:17-cv-00670-TLN-AC<br><br>**DEFENDANT EQUIFAX INFORMATION SERVICES LLC'S NOTICE OF MOTION AND PARTIAL MOTION TO DISMISS AND STRIKE PLAINTIFF'S CLASS ALLEGATIONS**<br><br>Date:  August 23, 2018<br>Time: 2:00 p.m.<br>Judge: Hon. Troy L. Nunley<br>Courtroom: Courtroom 2 |

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on August 23, 2018, at 2:00 p.m., before the Honorable Troy L. Nunley in Courtroom 2 of the United States District Court, Eastern District of California, located at 501 I Street, Sacramento, CA 95814, Defendant Equifax Information Services LLC ("Equifax") will, and hereby does, move the Court under Federal Rules of Civil Procedure 12(b)(6), 12(f), and 23 to (i) dismiss Plaintiff's claims for alleged negligent and willful violations of § 1681e(b) (Counts I and II); and (ii) strike Plaintiff's class claims. This Motion is based on this Notice of Motion and the accompanying Memorandum of Law.

Dated: July 18, 2018

/s/ *Misty L. Peterson (admitted pro hac vice)*
MATTHEW H. DAWSON (SBN 307350)
mdawson@kslaw.com
King & Spalding LLP
601 South California Avenue
Palo Alto, CA 94304
Telephone:    +1 650 422 6700
Facsimile:    +1 650 422 6800

ZACHARY A. MCENTYRE (*pro hac vice*)
zmcentyre@kslaw.com
MISTY L. PETERSON (*pro hac vice*)
mpeterson@kslaw.com
BILLIE B. PRITCHARD (*pro hac vice*)
bpritchard@kslaw.com
KING & SPALDING LLP
1180 Peachtree Street NE
Atlanta, GA 30309
Telephone:   + 404 572 4600
Facsimile:   + 404 572 5100

Attorneys for Defendant
EQUIFAX INFORMATION SERVICES LLC

1  MATTHEW H. DAWSON (State Bar No. 307350)
   mdawson@kslaw.com
2  KING & SPALDING LLP
   601 South California Avenue
3  Palo Alto, CA 94304
   Telephone:    +1 650 422 6700
4  Facsimile:    +1 650 422 6800

5  ZACHARY A. MCENTYRE (*pro hac vice*)
   zmcentyre@kslaw.com
6  MISTY L. PETERSON (*pro hac vice*)
   mpeterson@kslaw.com
7  BILLIE B. PRITCHARD (*pro hac vice* pending)
   bpritchard@kslaw.com
8  KING & SPALDING LLP
   1180 Peachtree Street NE
9  Atlanta, GA 30309
   Telephone:    +1 404 572 4600
10 Facsimile:    +1 404 572 5100

11 Attorneys for Defendant
   EQUIFAX INFORMATION SERVICES LLC

12                 UNITED STATES DISTRICT COURT

13                 EASTERN DISTRICT OF CALIFORNIA

14

15

16 KELLIE GADOMSKI, individually and on        Case No. 2:17-cv-00670-TLN-AC
   behalf of all others similarly situated,
17                                              **DEFENDANT EQUIFAX INFORMATION
                      Plaintiff,                SERVICES LLC'S MEMORANDUM IN
18                                              SUPPORT OF ITS PARTIAL MOTION
           v.                                   TO DISMISS AND STRIKE PLAINTIFF'S
19                                              CLASS ALLEGATIONS**
   EQUIFAX INFORMATION SERVICES
20 LLC,                                         Date: August 23, 2018
                                                Time: 2:00 p.m.
21                    Defendant.                Judge: Hon. Troy L. Nunley
                                                Courtroom: Courtroom 2
22

23

24

25

26

27

28

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................1

RELEVANT BACKGROUND ..............................................................................................3

    I.     REPORTING AND REINVESTIGATION OF CONSUMER

           BANKRUPTCIES ...............................................................................................3

    II.    PLAINTIFF'S WELLS FARGO ACCOUNT AND CHAPTER 7

           BANKRUPTCY .................................................................................................4

    III.   PLAINTIFF'S CLAIMS ....................................................................................5

ARGUMENT .........................................................................................................................6

    I.     THE COURT SHOULD DISMISS PLAINTIFF'S § 1681e(b) CLAIMS. ...................6

          A.   Plaintiff Fails To Plausibly Allege That Equifax Lacks Reasonable

              Procedures.............................................................................................6

          B.   At A Minimum, Plaintiff Fails To Allege A Willful Violation of

              § 1681e(b). ..........................................................................................10

    II.    THE COURT SHOULD STRIKE PLAINTIFF'S CLASS ALLEGATIONS. ...........11

          A.   The Individualized "Inaccuracy" Element Precludes Class Certification. .........13

          B.   The Court Lacks Personal Jurisdiction Over Nonresidents' Claims. .................15

               1. Equifax Is Not Subject To General Jurisdiction In California........................16

              2. Specific Jurisdiction Over Equifax Cannot Extend To Nonresidents'

                 Claims. ..........................................................................................17

CONCLUSION......................................................................................................................18

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997)...........................................................................13

*Andrade v. Desert Champions LLC*,
    113 F. Supp. 3d 1020 (N.D. Cal. 2015) ...................................................11

*Anthony v. Experian Info. Sols. Inc.*,
    No 2:14-CV-01230-MCE-EFB, 2017 WL 1198499 (E.D. Cal. Mar. 31, 2017) ......................8

*Artus v. Experian Info. Solutions, Inc.*,
    No. 5:16-cv-03322-EJD, 2017 WL 346022 (N.D. Cal. Jan. 24, 2017) ...................14

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...................................................................6, 8, 10

*Bauer v. Nortek Glob. HVAC LLC*,
    No. 3:14-cv-1940, 2016 WL 5724232 (M.D. Tenn. Sept. 30, 2016) ....................18

*Bauman v. DaimlerChrysler Corp.*,
    644 F.3d 909 (9th Cir. 2011) ...............................................................16

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)........................................................................6, 8

*Belton v. GE Capital Consumer Lending, Inc.* (*In re Belton*),
    Case No. 12-23037 (RDD), 2014 WL 5819586 (Bankr. S.D.N.Y. Nov. 10,
    2014), *reversed by* Case Nos. 15-CV-1934(VB), 15-CV-3311(VB), 2015 WL
    6163083 (S.D.N.Y. Oct. 14, 2015) ..........................................................9

*Berger v. Home Depot USA, Inc.*,
    741 F.3d 1061 (9th Cir. 2014) ...............................................................13

*Bristol-Myers Squibb Co. v. Superior Court*,
    137 S. Ct. 1773 (2017).................................................................16, 17, 18

*Carvalho v. Equifax Info. Servs., LLC*,
    629 F.3d 876 (9th Cir. 2010) ...............................................................13

*Childress v. Experian Info. Sols., Inc.*,
    790 F.3d 745 (7th Cir. 2015) ...............................................................11

*Comcast Corp. v. Behrend,*
    569 U.S. 27 (2013)....................................................................................13

*Daimler AG v. Bauman,*
    134 S. Ct. 746 (2014)...........................................................................16, 17

*Darrin v. Bank of Am., N.A.,*
    No. 2:12-CV-00228-MCE-KJN, 2014 WL 1922819 (E.D. Cal. May 14, 2014)....................8

*DeBernardis v. NBTY, Inc.,*
    No. 17 C 6125, 2018 WL 461228 (N.D. Ill. Jan. 18, 2018) .............................18

*Doe v. Mazo,*
    No. 2:16-cv-00239, 2016 WL 4497755 (D. Nev. Aug. 25, 2016)...........................11

*Faulk v. Sears Roebuck & Co.,*
    No. 11-cv-02159, 2013 WL 1703378 (N.D. Cal. Apr. 19, 2013)...........................15

*Frost v. Am. Lung Ass'n of Cent. States,*
    Civil Action No. H-09-310, 2009 WL 1636944 (S.D. Tex. June 11, 2009)..................9

*George v. Chex Sys., Inc.,*
    Case No. 16-2450-JTM, 2017 WL 119590 (D. Kan. Jan. 12, 2017)..........................11

*Gomez v. Kroll Factual Data, Inc.,*
    No. 13-cv-0445, 2014 WL 1456530 (D. Colo. Apr. 14, 2014) .............................15

*Goodyear Dunlop Tires Operations, S.A. v. Brown,*
    564 U.S. 915 (2011)...........................................................................16, 17

*Gorman v. Wolpoff & Abramson, LLP,*
    584 F.3d 1147 (9th Cir. 2009) ................................................................14

*Grigoryan v. Experian Info. Sols., Inc.,*
    84 F. Supp. 3d 1044, 1067 (C.D. Cal. 2014) ................................................8, 9

*Guimond v. Trans Union Credit Info. Co.,*
    45 F.3d 1329 (9th Cir. 1995) ................................................................2, 3

*Hanlon v. Chrysler Corp.,*
    150 F.3d 1011 (9th Cir. 1998) ...............................................................13

*Harper v. Trans Union, LLC,*
    No. 04-3510, 2006 WL 3762035 (E.D. Pa. Dec. 20, 2006)...................................15

*Harris v. Cty. of Orange,*
    682 F.3d 1126 (9th Cir. 2012) ................................................................3

*In re Haynes,*
    Case No. 11-23212 (RDD), 2014 WL 3608891 (Bankr. S.D.N.Y. July 22,
    2014) ...........................................................................................................10

*Henson v. CSC Credit Servs.,*
    29 F.3d 280 (7th Cir. 1994) ..........................................................................6

*Hernandez v. Select Portfolio, Inc.,*
    No. CV 15-01896 MMM, 2015 WL 3914741 (C.D. Cal. June 25, 2015)................8

*Jianqing Wu v. Trans Union,*
    Civil Action No. AW-03-1290, 2006 WL 4729755 (D. Md. May 2, 2006)...........9

*Keil v. Equifax Info. Servs.,*
    Case No. C 13-03989 SI, 2014 WL 4477610 (N.D. Cal. Sept. 10, 2014) ..............10

*Klotz v. Trans Union, LLC,*
    246 F.R.D. 208 (E.D. Pa. 2007) ....................................................................15

*Kuehling v. Trans Union, LLC,*
    137 F. App'x 904 (7th Cir. 2005) .................................................................13

*Lee v. Pep Boys-Manny Moe & Jack of Cal.,*
    No. 12-cv-5064, 2015 WL 9480475 (N.D. Cal. Dec. 23, 2015)....................13

*Maldonado v. HSBC Mortg. Sys., Inc.,*
    No. 2:16-cv-00784, 2017 WL 3496460 (D. Nev. Aug. 15, 2017).........................12

*Mantolete v. Bolger,*
    767 F.2d 1416 (9th Cir. 1985) ......................................................................12

*Mazza v. Am. Honda Motor Co., Inc.,*
    666 F.3d 581 (9th Cir. 2012) ........................................................................13

*Myers v. Bennett Law Offices,*
    238 F.3d 1068 (9th Cir. 2001) ......................................................................17

*Norman v. Applied Card Sys., Inc. (In re Norman),*
    No. 04-11682, 2006 WL 2818814 (Bankr. M.D. Ala. Sept. 29, 2006) ...............10

*Orozco v. Experian Info. Sols.,*
    No. 2:12-CV-00955-MCE-KJN, 2012 WL 2799681 (E.D. Cal. July 9, 2012) .........6

*Owner-Operator Indep. Drivers Ass'n, Inc. v. USIS Commercial Servs., Inc.,*
    537 F.3d 1184 (10th Cir. 2008) .....................................................................13

*Picot v. Weston,*
    780 F.3d 1206 (9th Cir. 2015) ......................................................................17

EQUIFAX PARTIAL MOTION TO DISMISS
AND STRIKE CLASS ALLEGATIONS
    iv
    CASE NO. 2:17-CV-00670-TLN-AC

*Practice Mgmt. Support Servs., Inc. v. Cirque du Soleil, Inc.*,
  301 F. Supp. 3d 840, 846, 865-66 (N.D. Ill. 2018)...........................................................15, 17

*Prouty v. Nat'l R.R. Passenger Corp.*,
  99 F.R.D. 545 (D.D.C. 1983) .....................................................................................................9

*Safeco Ins. Co. of Am. v. Burr*,
  551 U.S. 47 (2007)...............................................................................................................10, 11

*Sarver v. Experian Info. Sols.*,
  390 F.3d 969 (7th Cir. 2004) ....................................................................................................9

*SEC v. Ross*,
  504 F.3d 1130 (9th Cir. 2007) ................................................................................................15

*Soutter v. Equifax Info. Servs., LLC*,
  498 F. App'x 260 (4th Cir. 2012) .............................................................................................6

*Stiller v. Costco Wholesale Corp.*,
  673 F. App'x 783 (9th Cir. 2017) ...........................................................................................13

*Telesaurus VPC, LLC v. Power*,
  623 F.3d 998 (9th Cir. 2010) ....................................................................................................6

*Twombly. Deerpoint Grp., Inc. v. Acqua Concepts, Inc.*,
  No. 1:14-CV-01503-SAB, 2014 WL 7178210 (E.D. Cal. Dec. 16, 2014) ............................10

*Tyson Foods, Inc. v. Bouaphakeo*,
  136 S. Ct. 1036 (2016) ............................................................................................................13

*Wal-Mart Stores, Inc. v. Dukes*,
  131 S. Ct. 2541 (2011) ...............................................................................................................2

*Wang v. Chinese Daily News, Inc.*,
  737 F.3d 538 (9th Cir. 2013) ..................................................................................................13

*Wenokur v. AXA Equitable Life Ins. Co.*,
  No. CV-17-00165-PHC-DLR, 2017 WL 4357916 (D. Ariz. Oct. 2, 2017) ...........................18

*White v. Experian Info. Sols., Inc.*,
  8:05-cv-01070-DOC-MLG, Doc. 338 (C.D. Cal. Aug. 19, 2008)..............................1, 3, 4, 7

*Wright v. Experian Info. Sols., Inc.*,
  805 F.3d 1232 (10th Cir. 2015) ................................................................................................9

**Statutes**

15 U.S.C. § 1681c .........................................................................................................................3

15 U.S.C. § 1681e(b) ................................................................................ *passim*

15 U.S.C. § 1681i(a) ................................................................................ *passim*

15 U.S.C. § 1681a(d)(1) ...................................................................................3

Bankruptcy Code Chapter 7 and Chapter 13 .........................................5, 12

Cal. Civ. Proc. Code § 410.10 .......................................................................16

Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq.* ....................................1

FCRA ....................................................................................................... *passim*

**Other Authorities**

Fed. R. Civ. P. 8 ...............................................................................................8

Fed. R. Civ. P. 12(f) ..................................................................................2, 11

Fed. R. Civ. P. 23 ......................................................................2, 11, 13, 15

Jessica Silver Greenberg, *Debts Canceled by Bankruptcy Still Mar Consumer Credit Scores*, N.Y. Times, Nov. 12, 2014, *available at* https://dealbook.nytimes.com/2014/11/ ...............................................10

1 Joseph M. McLaughlin, *McLaughlin on Class Actions* § 3:4 (14th ed. 2017) ..........................12

**INTRODUCTION**

Plaintiff Kellie Gadomski's First Amended Complaint ("FAC") does not cure critical defects in her original complaint. If anything, the FAC only confirms the implausibility of Plaintiff's claims under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, *et seq.*. Like her original Complaint, Plaintiff's FAC includes detailed allegations about how consumer reporting agencies ("CRAs"), like Equifax, are supposed to report pre-bankruptcy debts once a CRA learns that a consumer has filed for bankruptcy. *See, e.g.*, FAC ¶¶ 40-72, 82-84. A federal court in the Central District of California expressly approved those procedures in *White v. Experian Info. Sols., Inc.*, 8:05-cv-01070-DOC-MLG, Doc. 338 (C.D. Cal. Aug. 19, 2008) (settlement order in lead case). But Plaintiff's claims are not based on those procedures. Instead, Plaintiff alleges that Equifax violated the FCRA because Equifax did not identify that she had filed for Chapter 7 bankruptcy *in the first place*, and thus Equifax did not report her Wells Fargo account as discharged in bankruptcy. *See* FAC ¶¶ 129, 132.

Plaintiff does not allege that Equifax systematically fails to identify consumer bankruptcy information. Rather, Plaintiff contends that her bankruptcy somehow slipped through the cracks, even though "Equifax affirmatively seeks out and obtain[s] public record data," *id.* ¶ 79, allegedly using *both* PACER and LexisNexis "to regularly obtain access to each and every discharge order issued by a U.S. Bankruptcy Court in Chapter 7 proceedings," *id.* ¶ 129; *see also id.* ¶¶ 77-78, 131, 150 (adding allegations regarding LexisNexis). Plaintiff goes so far as to assert that "LexisNexis sends each CRA, including Equifax, between ten and twenty million public records annually—one-third of which are bankruptcies," *id.* ¶ 79, and that other CRAs who also rely on LexisNexis *did* report Plaintiff's bankruptcy. *Id.* ¶ 130 ("Experian and TranUnion reported the Bankruptcy in the "Public Records" sections of their respective credit reports for Plaintiff during the same reporting time frame[.]").

Plaintiff's quarrel is not with Equifax's procedures for identifying accounts that have been discharged in bankruptcy once Equifax knows about the bankruptcy; Plaintiff's claim is that Equifax happened to overlook her bankruptcy (and thus the subsequent discharge). That is

*not* a willful violation of § 1681e(b)—or even a negligent violation of that section. It is at most, an alleged one-off error. The FCRA does not require Equifax to "achieve close to 100 percent accuracy in the reporting of the status of pre-bankruptcy debts," as Plaintiff alleges. FAC ¶ 77. It only requires Equifax to use "*reasonable* procedures to assure maximum possible accuracy." 15 U.S.C. § 1681e(b) (emphasis added). "Reasonable procedures" include relying on LexisNexis and Wells Fargo to provide accurate information. And overlooking one record does not mean that Equifax failed to use reasonable procedures in preparing Plaintiff's consumer report in the first instance, *see Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995), much less that Equifax willfully violated the statute. The Court, therefore, should dismiss Plaintiff's claims under § 1681(e)b.[1]

Further, Plaintiff's class allegations are facially and irremediably defective, such that it is entirely proper for the Court to dismiss the allegations at the pleading stage. *First*, Plaintiff's claims require her to prove that Equifax reported inaccurate bankruptcy information about every purported class member. The accuracy of the information Equifax reported about any given putative class member is the prototypical individualized issue that cannot be proven "in one stroke." *See Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). The information that Plaintiff alleges Equifax inaccurately reported about her, by its nature, was not based on a systematic procedure; it was an anomalous alleged oversight. As Plaintiff's own circumstances demonstrate, establishing inaccuracy based on that oversight will require highly individualized proof that would overwhelm any common questions at trial. *Second*, even if Plaintiff could meet her burden of demonstrating that some class should be certified, this Court cannot certify her proposed *nationwide* classes because the Court lacks personal jurisdiction over Equifax for any claims that arise outside of California. Accordingly, the Court should strike Plaintiff's class allegations under Rule 12(f) and Rule 23.

---

[1] Equifax is not presently moving to dismiss Plaintiff's individual claims that Equifax allegedly violated § 1681i(a). At most, this case is a single-plaintiff lawsuit about how Equifax handled Plaintiff's dispute.

1

**RELEVANT BACKGROUND**

2

**I.     REPORTING AND REINVESTIGATION OF CONSUMER BANKRUPTCIES**

3      Equifax is a nationwide consumer reporting agency ("CRA") that assembles and provides

4 information about consumers in "consumer reports," as defined in § 1681a(d)(1), which Plaintiff

5 refers to as "credit reports." FAC ¶ 17. That information may include "[p]ublic record items such

6 as bankruptcy, foreclosure, judgments, and wage garnishments." *See id.* ¶ 35; *see also* 15 U.S.C.

7 § 1681c (imposing temporal restrictions on reporting of certain public records). As a CRA,

8 Equifax is required to employ "*reasonable* procedures to assure maximum possible accuracy of

9 the information concerning the individual about whom the report relates," 15 U.S.C. § 1681e(b)

10 (emphasis added), and to take "*reasonable*" steps to reinvestigate certain information disputed by

11 consumers, *id.* § 1681i(a)(1)(A) (emphasis added). It is not required to report with complete

12 accuracy; the FCRA is not a strict liability statute. *Guimond*, 45 F.3d at 1333.

13      As Plaintiff recognizes, Equifax (like the other nationwide CRAs) employs court-

14 approved reporting and reinvestigation procedures with respect to Chapter 7 bankruptcies based

15 on a 2008 settlement commonly known as *Pike-White-Hernandez* ("*Pike-White*"). FAC ¶ 82; *see*

16 *White v. Experian Info. Sols., Inc.*, 8:05-cv-01070-DOC-MLG, Doc. 338 (C.D. Cal. Aug. 19,

17 2008).[2] Under the *Pike-White* order, once Equifax registers that a consumer has received a

18 discharge under Chapter 7, it assumes that certain pre-bankruptcy debts were discharged unless it

19 learns otherwise—through the consumer, its own investigation, or through a "furnisher" of

20 information (typically the creditor). *See* FAC ¶¶ 82-84; *White*, Doc. 338 §§ 3.2, 3.4. The *Pike-*

21 *White* court "conclusively deemed" these Chapter 7 reporting and reinvestigation procedures "to

22 comply with the FCRA," and it expressly prohibited "all future litigation or attempted litigation

23 under the FCRA or FCRA State Equivalents regarding the reasonableness" of those procedures

24 "absent a fundamental change in circumstance." *White*, Doc. 338 §§ 5.4-5.6. The court also

25

26

27

---

[2]  Equifax requests that the Court exercise its discretion to take judicial notice of the filings in *Pike-White*, which Plaintiff specifically cites. FAC ¶¶ 82 n.4, 100 n.8; *see Harris v. Cty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012) (explaining that courts may take judicial notice of documents referenced in the complaint and those "on file in federal or state courts").

28

retained jurisdiction "to resolve any future disputes arising out of the terms and conditions of the Settlement, and to effectuate the Settlement." *Id.* § 9.5.

Critical to this case, *Pike-White* did not specify the procedures CRAs should use to identify bankruptcy filings in the first instance—only how to report pre-bankruptcy debts after the bankruptcy was on the consumer's credit file. *See generally id.* When it comes to reporting bankruptcies in the first place—as opposed to reporting pre-bankruptcy accounts once it registers the consumer has declared bankruptcy—Plaintiff alleges that Equifax does not "reasonably use available procedures including, but not limited to, services within PACER and LexisNexis. . . ." FAC ¶ 78. Yet, Plaintiff also alleges that "Equifax, as a part of its regular policies and procedures, utilize[s] the computerized court reporting service known as PACER (as well as LexisNexis) to regularly obtain access to each and every discharge order issued by a U.S. Bankruptcy Court in Chapter 7 proceedings." *Id.* ¶ 129.

## II.    PLAINTIFF'S WELLS FARGO ACCOUNT AND CHAPTER 7 BANKRUPTCY

Around September 2009, Plaintiff opened a credit card account with Wells Fargo. FAC ¶ 121. She subsequently fell behind in her payments, leading Wells Fargo to "Charge[] Off" the account around August 2012. *Id.* ¶ 122. Presumably because of her dire financial circumstances, on April 24, 2013, Plaintiff filed a "no asset" Chapter 7 bankruptcy in the U.S. Bankruptcy Court for this District. *See id.* ¶ 100. Four months later, the bankruptcy court allegedly discharged the Wells Fargo account. *Id.* ¶¶ 105, 124.

According to Plaintiff, Wells Fargo informed Equifax that Plaintiff's account was charged off, rather than discharged in bankruptcy. *Id.* ¶¶ 108, 123. Plaintiff does not allege that Equifax received notice of Plaintiff's bankruptcy discharge or other notice from her that the information was inaccurate before she disputed the Wells Fargo account. Instead, Plaintiff alleges that Equifax did not "realize Plaintiff's debt was subject to bankruptcy," meaning that Equifax would not have added the bankruptcy to Plaintiff's file or applied the usual *Pike-White* coding for Chapter 7 debtors. *See id.* ¶ 132; *White*, Doc. 338. Plaintiff alleges that Equifax, unaware of Plaintiff's bankruptcy and having been told by Wells Fargo that Plaintiff's account

was charged off, "failed to report [Plaintiff's] Bankruptcy in the 'Public Records' section of Plaintiff's credit report." FAC ¶¶ 129, 146. According to Plaintiff, in a consumer report dated November 13, 2016,[3] Equifax reported, based on the information it received from Wells Fargo, that, as of December 2012, the "Current (Pay) Status" of Plaintiff's account was "Charged Off." *Id.* ¶ 123.

Later in November 2016, Plaintiff sent a letter to Equifax requesting that it remove the reported Wells Fargo information. *Id.* ¶¶ 138-139. Equifax timely forwarded the dispute to Wells Fargo, and Wells Fargo reaffirmed the reported information. *Id.* ¶ 140. Equifax notified Plaintiff of the results of the reinvestigation on or around December 15, 2016. *Id.* ¶ 143.

## III.    PLAINTIFF'S CLAIMS

Plaintiff seeks to represent a purported nationwide class of consumers and two purported nationwide subclasses. *See* FAC ¶¶ 159, 166, 172. The purported class includes all Chapter 7 and Chapter 13 debtors whose Equifax consumer reports included "one or more . . . tradeline accounts or debts [which were] not reported as discharged." *Id.* ¶ 159. The alleged "Dispute Subclass" includes the same debtors whose allegedly discharged debts "continued to be erroneously reported by Equifax" after they disputed those debts. *Id.* ¶ 166. The alleged "Public Record Subclass" includes debtors "whose record of Chapter 7 or 13 Bankruptcies fail to report in the 'Public Records' section of Equifax's credit reports any time." *Id.* ¶ 172.

Plaintiff asserts individual and putative class claims[4] for alleged willful violation of § 1681e(b) (Count I); negligent violation of § 1681e(b) (Count II); willful violation of § 1681i(a) (Count III); and negligent violation of § 1681i(a) (Count IV). *Id.* ¶¶ 178-204.

---

[3] Plaintiff does not allege whether she obtained this report herself (a "consumer disclosure"), or if Equifax issued it to a third party (a "consumer report"). *See generally* FAC ¶¶ 121-146. For purposes of this motion, Equifax assumes—without conceding—that it was the latter.

[4] Plaintiff asserts each claim "On behalf of Plaintiff and all Class Members, including Dispute and Public Record Subclass Members."

**ARGUMENT**

**I.    THE COURT SHOULD DISMISS PLAINTIFF'S § 1681e(b) CLAIMS.**

To survive a motion to dismiss, Plaintiff must allege "sufficient factual matter" that is "plausible on its face," showing that she is entitled to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The allegations must provide "more than labels and conclusions." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 556 n.3 (2007) (a "formulaic recitation of the elements of a cause of action will not do," and a "blanket assertion of entitlement to relief" is insufficient). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Moreover, the "district court may deny a plaintiff leave to amend if it determines that allegation[s] of other facts consistent with the challenged pleading could not possibility cure the deficiency[.]" *Telesaurus VPC, LLC v. Power*, 623 F.3d 998, 1003 (9th Cir. 2010) (quotation omitted). Plaintiff's § 1681e(b) claims do not meet this standard.

**A.  Plaintiff Fails To Plausibly Allege That Equifax Lacks Reasonable Procedures.**

Section 1681e(b) requires CRAs to implement "*reasonable* procedures to assure maximum possible accuracy" in consumer reports. (emphasis added). It does *not* require CRAs to be 100% accurate 100% of the time. Put differently, a CRA "is not automatically liable [under § 1681e(b)] even if the consumer proves that it prepared an inaccurate credit report because the FCRA does not make reporting agencies strictly liable for all inaccuracies." *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994) (quotation omitted). Accordingly, to assert a colorable § 1681e(b) claim, Plaintiff must allege that (1) her consumer report was inaccurate; (2) Equifax's *unreasonable procedures* caused the inaccuracy; and (3) Equifax's behavior was willful or caused her to suffer actual injury. *See Orozco v. Experian Info. Sols.*, No. 2:12-CV-00955-MCE-KJN, 2012 WL 2799681, at *4 (E.D. Cal. July 9, 2012) (dismissing plaintiffs' § 1681e(b) claim for failure to allege sufficient facts to suggest "why there is any reason to believe that the CRAs did not establish or follow reasonable procedures to assure the accuracy of the information"); *see also Soutter v. Equifax Info. Servs., LLC*, 498 F. App'x 260, 265 (4th Cir.

2012) ("unreasonable procedures" is an element of a § 1681e(b) claim).

Even assuming Plaintiff's consumer report was inaccurate because it did not include her Chapter 7 bankruptcy, she cannot prevail on her § 1681e(b) claim because she fails to plausibly allege that Equifax lacks "*reasonable* procedures to assure maximum possible accuracy."[5] *Id.* (emphasis added). According to Plaintiff, the "reasonable procedures" that § 1681e(b) requires in the context of reporting bankruptcies and pre-bankruptcy debts essentially include:

   i.    Affirmatively searching the federal courts' PACER system for every bankruptcy discharge in the United States at an undisclosed interval of time;

   ii.   Reviewing the discharge orders and associated bankruptcy petitions for every respective debtor;

   iii.  Comparing the personal identifying information for each respective debtor to the personal identifying information for every consumer in the CRA's system;

   iv.   Determining whether the CRA maintains information on each debtor who was discharged in bankruptcy;

   v.    Evaluating each discharge order to determine whether the debts that were discharged in bankruptcy are those same debts listed in the CRA's files on that individual; and

   vii.  Annotating the respective debt.

*See* FAC ¶¶ 77-79. According to Plaintiff, these procedures could "achieve close to 100 percent accuracy in the reporting of the status of pre-bankruptcy debts," *id.* ¶ 77, and the alleged failure to follow these near "100 percent accuracy" procedures is a failure to follow reasonable procedures under the FCRA. *Id.* ¶¶ 77-78.

Plaintiff's interpretation of the FCRA is unprecedented. Neither the plain language of the FCRA nor any other authority Equifax has located suggests that the statute imposes Plaintiff's

---

[5] If Plaintiff contends that Equifax lacks reasonable procedures for reporting debts discharged in Chapter 7 bankruptcy (rather than the way Equifax registers bankruptcies in the first instance), her claims are expressly barred by *Pike-White*. *White*, Doc. 338 §§ 5.4-5.6. Alternatively, if Plaintiff claims Equifax has failed to comply with *Pike-White*, the *Pike-White* court has exclusive jurisdiction to resolve that claim. *Id.* § 9.5. It is apparent, however, that Plaintiff's claim is not based on either contention (despite the many paragraphs of background information that relate to those issues). Plaintiff's claim turns on the fact that Equifax did not report her bankruptcy in the first place, which is an altogether different matter.

impossible standard or requires the herculean efforts Plaintiff proposes. But even if the FCRA did require Equifax to adopt those procedures, Plaintiff has doubled down on her assertion that those procedures are *already in place*.

In her original Complaint, Plaintiff alleged that "Equifax, as part of its regular policies and procedures, utilize[s] . . . PACER to regularly obtain access to *each and every* discharge order issued by a U.S. Bankruptcy Court in Chapter 7 proceedings." Compl. ¶ 125 (emphasis added). Now, Plaintiff goes one step further, alleging that Equifax uses "PACER (*as well as LexisNexis*) to regularly obtain access to each and every discharge order[.]" FAC ¶ 129 (emphasis added). In other words, Plaintiff alleges that Equifax conducts an even more rigorous review by obtaining public records information from an additional source (LexisNexis)—which goes far beyond the procedures required by the FCRA. Plaintiff cannot plausibly contend, on the one hand, that Equifax lacks "reasonable procedures" for collecting bankruptcy information while alleging, on the other hand, that Equifax already implements the "procedure" Plaintiff (wrongly) argues that the FCRA requires. On that basis alone, her claim under § 1681e(b) fails as a matter of law. *See Hernandez v. Select Portfolio, Inc.*, No. CV 15-01896 MMM (AJWx), 2015 WL 3914741, at *10 (C.D. Cal. June 25, 2015) ("Contradictory allegations such as these are inherently implausible, and fail to comply with Rule 8, *Twombly*, and *Iqbal*.").

Plaintiff cannot salvage her § 1681e(b) claim by challenging Wells Fargo's entirely separate report of her pre-bankruptcy account. As one court in this Circuit has explained:

> If a consumer reporting agency accurately transcribes, stores and communicates consumer information received from a source that it *reasonably believes* to be reputable, and which is credible on its face, the agency does not violate § 1681e(b) . . . simply by reporting an item of information that turns out to be inaccurate.

*Grigoryan v. Experian Info. Sols., Inc.*, 84 F. Supp. 3d 1044, 1067 (C.D. Cal. 2014) (quotation and alterations omitted); *see also Anthony v. Experian Info. Sols. Inc.*, No 2:14-CV-01230-MCE-EFB, 2017 WL 1198499, at *6 (E.D. Cal. Mar. 31, 2017); *Darrin v. Bank of Am., N.A.*, No. 2:12-CV-00228-MCE-KJN, 2014 WL 1922819, at *6 (E.D. Cal. May 14, 2014). Put another way, "as a matter of law, a credit reporting agency is not liable under the FCRA for reporting inaccurate

information obtained from a [presumptively reliable source], absent prior notice . . . that the information may be inaccurate." *Wright v. Experian Info. Sols., Inc.*, 805 F.3d 1232, 1241 (10th Cir. 2015) (quotation omitted); *accord Sarver v. Experian Info. Sols.*, 390 F.3d 969, 972 (7th Cir. 2004) ("In the absence of notice of prevalent unreliable information from a reporting lender, which would put [a CRA] on notice that problems exist, we cannot find that such a requirement to investigate would be reasonable. . . ."). Indeed, "[t]o make [a CRA] liable under the FCRA for relying on the records of businesses, which [the CRA] has identified as trustworthy, would vitiate one of the purposes of the FCRA, to facilitate commerce," and "would render it economically infeasible for CRAs to function." *Jianqing Wu v. Trans Union*, Civil Action No. AW-03-1290, 2006 WL 4729755, at *7 (D. Md. May 2, 2006). "Nothing in the FCRA or its implementing regulations evinces the intent to place such heavy burdens on CRAs." *Id.*

Given that Equifax did not register Plaintiff's bankruptcy, it had no reason to question the accuracy of Wells Fargo's factually consistent report. *See Grigoryan*, 84 F. Supp. 3d at 1068. And Plaintiff has not alleged any facts that suggest Equifax should have disregarded that report when assembling her consumer report. Plaintiff alleges, at best, that other consumers have complained about how Equifax and Wells Fargo reported their pre-bankruptcy accounts. FAC ¶¶ 91-92. Those consumer complaints prove nothing other than that consumers have complained; they certainly do not establish that Wells Fargo is anything other than a presumptively reliable source of information. *See, e.g.*, *Frost v. Am. Lung Ass'n of Cent. States*, Civil Action No. H-09-310, 2009 WL 1636944, at *1 (S.D. Tex. June 11, 2009) (denying motion to compel information "regarding other claims and lawsuits" as "irrelevant"); *see also Prouty v. Nat'l R.R. Passenger Corp.*, 99 F.R.D. 545, 549 (D.D.C. 1983) (denying motion to compel response to interrogatory seeking all lawsuits filed against defendant).

Plaintiff has not identified any facts or authority that suggests Equifax should have known that *Wells Fargo*, as opposed to other furnishers, had systematic problems with its reporting practices. *See* FAC ¶ 85 n.5 (citing *Belton v. GE Capital Consumer Lending, Inc.* (*In re Belton*), Case No. 12-23037 (RDD), 2014 WL 5819586, at *1 (Bankr. S.D.N.Y. Nov. 10, 2014)

(addressing GE Capital Consumer Lending, Inc.'s alleged failure to correctly report pre-bankruptcy debt), *reversed by* Case Nos. 15-CV-1934(VB), 15-CV-3311(VB), 2015 WL 6163083 (S.D.N.Y. Oct. 14, 2015); *Keil v. Equifax Info. Servs.*, Case No. C 13-03989 SI, 2014 WL 4477610, at *2 (N.D. Cal. Sept. 10, 2014) (denying plaintiff's motion for partial summary judgment against Community First Credit Union); *In re Haynes*, Case No. 11-23212 (RDD), 2014 WL 3608891 (Bankr. S.D.N.Y. July 22, 2014) (addressing claims against Chase Bank USA, N.A.); Jessica Silver Greenberg, *Debts Canceled by Bankruptcy Still Mar Consumer Credit Scores*, N.Y. Times, Nov. 12, 2014, *available at* https://dealbook.nytimes.com/2014/11/12/debts-canceled-by-bankruptcy-still-mar-consumer-credit-scores (discussing investigation of JPMorgan Chase, Bank of America, Citigroup, and Synchrony Financial)); *see also* FAC ¶ 85 n.6 (citing *Norman v. Applied Card Sys., Inc. (In re Norman)*, No. 04-11682, 2006 WL 2818814 (Bankr. M.D. Ala. Sept. 29, 2006) (addressing claim against Applied Card Bank)).

In sum, Plaintiff alleges that Equifax has implemented exhaustive procedures that far exceed what the FCRA requires, but those procedures simply missed Plaintiff's bankruptcy information. Plaintiff has not alleged that Equifax had any reason to question its own procedures or Wells Fargo's consistent account. Accordingly, her claim under § 1681e(b) should be dismissed.

## B.  At A Minimum, Plaintiff Fails To Allege A Willful Violation of § 1681e(b).

To sustain a claim for a willful violation of the FCRA, Plaintiff must plead and prove that Equifax recklessly disregarded consumers' rights in a manner that was "substantially greater" than the risk associated with mere carelessness.[6] *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 69 (2007). A defendant's conduct is reckless only if it was "objectively unreasonable" in light of

---

[6] Alternatively, Plaintiff must plausibly allege and ultimately prove that Equifax intentionally violated the law. Plaintiff's conclusory statements to that effect, FAC ¶¶ 10, 21, 156, do not suffice under *Iqbal* and *Twombly*. *Deerpoint Grp., Inc. v. Acqua Concepts, Inc.*, No. 1:14-CV-01503-SAB, 2014 WL 7178210, at *5 (E.D. Cal. Dec. 16, 2014) ("While detailed factual allegations are not required, . . . conclusory allegations without any facts alleged to support the claims are insufficient to state a plausible claim.").

"legal rules that were 'clearly established' at the time." *Id.* at 69-70; *see, e.g.*, *Andrade v. Desert Champions LLC*, 113 F. Supp. 3d 1020, 1024-25 (N.D. Cal. 2015) (granting motion to dismiss pursuant to *Safeco*). Plaintiff cannot clear that high hurdle.

The plain language of the FCRA does not require Equifax to independently pore through PACER to determine "the existence of a filed petition for a Chapter 7 no asset bankruptcy, a discharge order granting that petition[,] and the date of such discharge." *See* FAC ¶ 131. For that reason, Plaintiff's FAC fails to identify any legal "guidance . . . that might have warned [Equifax] away" from generating a consumer report on Plaintiff without first affirmatively checking PACER. *Safeco*, 551 U.S. at 70. To the contrary, just last year, one federal district court conducted its own, independent search and found *no authority* that requires CRAs "to adopt a procedure to check PACER for bankruptcy discharges prior to preparing a report." *George v. Chex Sys., Inc.*, Case No. 16-2450-JTM, 2017 WL 119590, at *3 (D. Kan. Jan. 12, 2017). Based on its search, the court concluded that "the 'maximum possible accuracy' standard of § 1681e does not require [defendant] to check PACER prior to preparing a report." *Id.*; *see also Childress v. Experian Info. Sols., Inc.*, 790 F.3d 745, 747 (7th Cir. 2015) (concluding that CRAs are not required to "review every bankruptcy dismissal" to satisfy the FCRA).[7] Accordingly, Plaintiff's FAC fails, as a matter of law, to state a claim for willful noncompliance of § 1681e(b) and those claims must be dismissed.

## II.   THE COURT SHOULD STRIKE PLAINTIFF'S CLASS ALLEGATIONS.

Under Federal Rules of Civil Procedure 12(f) and 23(d), the Court may "strike class allegations prior to discovery if the complaint demonstrates that a class action cannot be maintained." *Doe v. Mazo*, No. 2:16-cv-00239, 2016 WL 4497755, at *2 (D. Nev. Aug. 25,

---

[7] If that were not enough to defeat Plaintiff's willfulness claim, her own allegations finish the job. Even if the FCRA imposed a requirement that Equifax constantly check PACER for bankruptcy filings, Plaintiff apparently thinks Equifax already meets it and just happened to overlook her bankruptcy. *See* FAC ¶ 129 ("Equifax, as a part of its regular policies and procedures, utilize[s] the computerized court reporting service known as PACER (as well as LexisNexis) to regularly obtain access to each and every discharge order issued by a U.S. Bankruptcy Court in Chapter 7 proceedings").

2016); *see also Maldonado v. HSBC Mortg. Sys., Inc.*, No. 2:16-cv-00784, 2017 WL 3496460, at *4 & n.26 (D. Nev. Aug. 15, 2017) (similar). A pleading-stage motion to strike is appropriate in cases like this one, where it is "apparent on the face of the complaint" that "the putative class is improperly defined" and "the predominance of individual issues over questions common to the proposed class precludes certification of the class." 1 Joseph M. McLaughlin, *McLaughlin on Class Actions* § 3:4 (14th ed. 2017); *see also Mantolete v. Bolger*, 767 F.2d 1416, 1424-25 (9th Cir. 1985) (affirming district court's striking of class allegations where individual claims required "case-by-case adjudication").

Plaintiff seeks to represent a purported nationwide class and two purported nationwide subclasses of consumers whose Equifax consumer report contained "one or more of their tradeline accounts or debts . . . not reported as discharged despite the fact that such debts had been discharged as a result of their bankruptcy under Chapter 7 and Chapter 13 of the Bankruptcy Code." FAC ¶¶ 159, 166, 172. These purported classes cannot be certified because Plaintiff would have to plead and prove, as a threshold element of their claims under § 1681i(a) and § 1681e(b), that each purported class member's report did, in fact, contain inaccurate information. Plaintiff cannot make that allegation in good faith, nor does she even attempt to do so in the FAC. Plaintiff certainly could not *prove* that each class member's report contained inaccurate information. At a minimum, Plaintiff would have to introduce documents and testimony unique to each purported class member so that the jury could sort through the often complex, frequently conflicting facts about whether any particular item was or was not accurate. Put differently, even if Plaintiff had properly alleged and could prove at trial that *her* consumer report contained inaccuracies, that would do nothing to prove that every absent class member's report *also* included an inaccuracy. The individualized inquiries necessary to assess the accuracy of each purported class member's information would swamp any common issues, rendering this case a uniquely bad candidate for aggregate adjudication. And even if that defect did not defeat Plaintiff's class allegations—and it should—Plaintiff cannot represent the purported nationwide classes Plaintiff seeks to represent because the Court lacks personal jurisdiction over Equifax as

1  to any claims not arising from Equifax's conduct in California.

2    **A. The Individualized "Inaccuracy" Element Precludes Class Certification.**

3    To qualify for class certification, this case must meet Rule 23(a)'s requirements of

4  numerosity, commonality, typicality, and adequacy as well as Rule 23(b)(3)'s requirements of

5  predominance and superiority. *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 588-89 (9th

6  Cir. 2012). The predominance requirement, in particular, requires that "the questions of law or

7  fact common to class members" must "predominate over any questions affecting only individual

8  members." Fed. R. Civ. P. 23(b)(3). This predominance requirement is "stringent," *Amchem*

9  *Prods., Inc. v. Windsor*, 521 U.S. 591, 609 (1997), and is "even more demanding" than Rule

10  23(a)'s commonality requirement. *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013). It focuses

11  on "'the relationship between the common and individual issues' in the case, and 'tests whether

12  proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Wang v.*

13  *Chinese Daily News, Inc.*, 737 F.3d 538, 545 (9th Cir. 2013) (quoting *Hanlon v. Chrysler Corp.*,

14  150 F.3d 1011, 1022 (9th Cir. 1998)). To satisfy the predominance requirement, "the same

15  evidence" must "suffice for each member to make a prima facie showing," and the issues before

16  the Court must be "susceptible to generalized, class-wide proof" that cannot vary from member

17  to member. *Stiller v. Costco Wholesale Corp.*, 673 F. App'x 783, 784 (9th Cir. 2017) (quoting

18  *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016)). "Considering whether

19  questions of law or fact common to class members predominate begins, of course, with the

20  elements of the underlying cause of action." *Berger v. Home Depot USA, Inc.*, 741 F.3d 1061,

21  1068 (9th Cir. 2014) (quotation omitted); *accord Lee v. Pep Boys-Manny Moe & Jack of Cal.*,

22  No. 12-cv-5064, 2015 WL 9480475, at *13 (N.D. Cal. Dec. 23, 2015).

23    Inaccuracy is a prima facie element of Plaintiff's § 1681i and § 1681e(b) claims. *See*

24  *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892 (9th Cir. 2010); *see also Kuehling v.*

25  *Trans Union, LLC,* 137 F. App'x. 904, 908 (7th Cir. 2005)  ("Without evidence of some

26  inaccuracy in the Trans Union report or reinvestigation, Kuehling cannot establish that Trans

27  Union violated the FCRA—either § 1681e(b) or § 1681i(a)(1)(A)"); *Owner-Operator Indep.*

28

*Drivers Ass'n, Inc. v. USIS Commercial Servs., Inc.*, 537 F.3d 1184, 1194 (10th Cir. 2008) (affirming denial of class certification where "the accuracy of each individual's [employment history report], an essential element of a § 1681e(b) claim, required a particularized inquiry"). This element requires individualized proof that would overwhelm any common questions. Every purported class member would need to prove, individually, that his or her consumer report contained truly inaccurate information—that is, that the information was either factually wrong or "misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions." *See Artus v. Experian Info. Solutions, Inc.*, No. 5:16-cv-03322-EJD, 2017 WL 346022, at *3 (N.D. Cal. Jan. 24, 2017) (quoting *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1163 (9th Cir. 2009)). To answer those questions, the jury would have to conduct a detailed review of the facts and circumstances relating to each class member, including at a minimum:

- hearing testimony from the consumer;
- reviewing any documentation submitted by the consumer that purportedly substantiates his or her "inaccuracy" dispute, including filings in any relevant bankruptcy proceedings;
- reviewing contemporaneous files and correspondence regarding the consumer's dispute maintained or sent while Equifax reinvestigated the consumer's file;
- reviewing any documentation maintained by the information furnishers (*e.g.*, lenders) who responded to inquiries regarding the underlying account, and any documentation exchanged between the furnishers and Equifax regarding the information; and
- determining whether a given item is "inaccurate" according to regulation and law under the FCRA.

There is nothing common about this evidence.

After conducting plaintiff-specific, file-specific assessments, the jury might determine that any consumer's report was, in fact, accurate. Or, after hearing all of the evidence, the jury

could determine that a consumer's report contained an inaccuracy. But the jury could not reach any conclusion, consistent with due process, without first assessing the evidence unique to each consumer. That kind of individualized, labor-intensive fact-finding exercise is the opposite of what Rule 23 was intended to accomplish. Claims that cannot be adjudicated without "introduc[ing] a great deal of individualized proof . . . are not suitable for class certification under Rule 23(b)(3)." *Faulk v. Sears Roebuck & Co.*, No. 11-cv-02159, 2013 WL 1703378, at *5 (N.D. Cal. Apr. 19, 2013) (quotation omitted). For these reasons, courts across the country routinely deny class certification in FCRA cases. *See, e.g.*, *Klotz v. Trans Union, LLC*, 246 F.R.D. 208, 216 (E.D. Pa. 2007) (denying class certification of § 1681i(a) claims based, in part, on required proof of inaccuracy); *see also Gomez v. Kroll Factual Data, Inc.*, No. 13-cv-0445, 2014 WL 1456530, at *3-4 (D. Colo. Apr. 14, 2014) (similar); *Harper v. Trans Union, LLC*, No. 04-3510, 2006 WL 3762035, at *8-9 (E.D. Pa. Dec. 20, 2006) (similar). This Court should join this long line of other federal courts and strike Plaintiff's class allegations, in their entirety.

### B.  The Court Lacks Personal Jurisdiction Over Nonresidents' Claims.

Even if Plaintiff could establish predominance and *some* class could be properly certified (or if the Court deferred ruling on that issue now), the *nationwide* classes alleged in Plaintiff's FAC cannot be certified because the Court lacks personal jurisdiction over Equifax as to such classes. *See, e.g.*, *Practice Mgmt. Support Servs., Inc. v. Cirque du Soleil, Inc.*, 301 F. Supp. 3d 840, 846, 865-66 (N.D. Ill. 2018) (denying certification of nationwide class because court would lack personal jurisdiction over non-resident defendant as to claims of non-resident class members).

To exercise personal jurisdiction, federal courts "must look either to the long-arm statutes of the state in which the court sits or to specific federal statutes," subject to the constraints otherwise imposed "by the Due Process Clauses of the Fifth and Fourteenth Amendments." *SEC v. Ross*, 504 F.3d 1130, 1138 (9th Cir. 2007) (internal citation omitted). As the FCRA contains no personal-jurisdiction provisions, the exercise of personal jurisdiction by the Court in this case is determined under the California long-arm statute, which "permits the exercise of personal

jurisdiction to the full extent permitted by due process." *Bauman v. DaimlerChrysler Corp.*, 644 F.3d 909, 919 (9th Cir. 2011); *see* Cal. Civ. Proc. Code § 410.10. Due process authorizes either "general" or "specific" jurisdiction over defendants, and recent Supreme Court precedent makes clear that neither would apply to claims by nationwide claimants in this case. *See Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1779-80 (2017); *Daimler AG v. Bauman*, 134 S. Ct. 746, 760 (2014). The Court should thus strike Plaintiff's nationwide class allegations.

### 1. *Equifax Is Not Subject To General Jurisdiction In California.*

"A court with general jurisdiction may hear *any* claim against that defendant, even if all the incidents underlying the claim occurred in a different State." *Bristol-Myers*, 137 S. Ct. at 1780 (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). In *Daimler*, the Supreme Court explained that "only a limited set of affiliations with a forum will render a defendant amenable to [such] all-purpose jurisdiction there." 134 S. Ct. at 760. For a corporation, the forum must be the "equivalent" of an individual's domicile: the state "in which the corporation is fairly regarded as at home." *Id.* (quoting *Goodyear*, 564 U.S. at 924). Absent "exceptional" circumstances, that state is the corporation's "place of incorporation and principal place of business," without regard to the extent to which the corporation conducts business in other states. *Id.* at 760-61 & n.19.

Here, there is no question that Equifax is not "at home" for jurisdictional purposes in California. As Plaintiff alleges, Equifax is a Georgia company "whose primary corporate address is in the City of Atlanta, in the State of Georgia[.]" FAC ¶ 16. Plaintiff's only allegations regarding Equifax's affiliation with California in the FAC are that the company "is authorized to do business in the State of California" and that "Equifax conducts business within the State of California" and thereby "purposefully availed themselves [sic] of the laws and markets of the State of California and this district." *Id.* ¶¶ 13, 16; *see also id.* ¶ 99 ("Equifax conducted business within the State of California at all times relevant."). Those allegations are facially insufficient to establish general jurisdiction—in fact, they are the very sorts of allegations that the Supreme Court and the Ninth Circuit have held do not give rise to general jurisdiction. *See, e.g.*,

1   *Goodyear*, 564 U.S. at 930 n.6 ("[E]ven regularly occurring sales of a product in a State do not

2   justify the exercise of jurisdiction over a claim unrelated to those sales."). Equifax is thus not

3   subject to general jurisdiction in California.

### 2. *Specific Jurisdiction Over Equifax Cannot Extend To Nonresidents' Claims.*

5   This case may proceed only to the extent the Court obtains specific jurisdiction over

6   Equifax. For a court to exercise specific jurisdiction, "the *suit* must arise out of or relate to the

7   defendant's contacts with the *forum*." *Bristol-Myers*, 137 S. Ct. at 1780 (quoting *Daimler*, 134 S.

8   Ct. at 754) (internal quotation omitted). In cases involving multiple claims or multiple claimants,

9   specific jurisdiction must be established as to each claim and as to each claimant. *See Picot v.*

10  *Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015) ("When a plaintiff relies on specific jurisdiction, he

11  must establish that jurisdiction is proper for each claim asserted against a defendant." (internal

12  quotation omitted)); *see also Bristol-Myers*, 137 S. Ct. at 1777 (holding that personal jurisdiction

13  was lacking as to claims brought by certain plaintiffs).

14  Plaintiff alleges that she is a California resident and that her individual claims arose in

15  California. *See* FAC ¶¶ 9, 15, 98. Yet, Plaintiff seeks to represent purported classes consisting of

16  "[a]ll individuals," regardless of where any putative class member's claim arose. *Id.* ¶ 159. Non-

17  resident members of the putative class whose claims do not arise out of an injury caused by

18  Equifax in California, however, cannot sue Equifax in California. *See Goodyear*, 564 U.S. at 919

19  (explaining that specific jurisdiction cannot be obtained even for resident plaintiffs where all of

20  the acts giving rise to the claim occurred outside of the forum state); *Myers v. Bennett Law*

21  *Offices*, 238 F.3d 1068, 1072-73 (9th Cir. 2001) (holding that an FCRA claim "must arise out of

22  [the defendant's] forum-related activities" and be "expressly aimed" at the forum state and

23  holding that the latter requirement is satisfied where the defendant "targeted" a plaintiff known

24  to be a forum *resident*).

25  The rules do not change just because this case was filed as a putative class action. *See,*

26  *e.g.*, *Practice Mgmt.*, 301 F. Supp. 3d at 861 ("[A] defendant's due process interest should be the

27  same in the class context."). This Court still may not exercise specific jurisdiction over

28

nonresidents' claims. *See Bauer v. Nortek Glob. HVAC LLC*, No. 3:14-cv-1940, 2016 WL 5724232, at *6 (M.D. Tenn. Sept. 30, 2016) ("As there is no general or specific jurisdiction over Defendants with respect to the Florida, Georgia, and Texas Plaintiffs' claims, those Plaintiffs and the classes they represent will be dismissed."). For that reason, district courts throughout the country have rejected proposed nationwide classes. *See, e.g.*, *DeBernardis v. NBTY, Inc.*, No. 17 C 6125, 2018 WL 461228, at *2 (N.D. Ill. Jan. 18, 2018) ("[C]ourts will apply *Bristol-Myers Squibb* to outlaw nationwide class actions in a for[u]m, such as in this case, where there is no general jurisdiction over the Defendants."); *Wenokur v. AXA Equitable Life Ins. Co.*, No. CV-17-00165-PHC-DLR, 2017 WL 4357916, at *4 n.4 (D. Ariz. Oct. 2, 2017) ("The Court . . . lacks personal jurisdiction over the claims of putative class members with no connection to Arizona and therefore would not be able to certify a nationwide class."). As these courts have held, a nationwide class cannot be certified if the defendant is not subject to personal jurisdiction as to each class member's claim. Here, there is no question that Equifax is not subject to personal jurisdiction as to any claims arising outside of California, and so the Court should strike Plaintiff's nationwide class allegations.

## CONCLUSION

For these reasons, the Court should grant Equifax's Partial Motion to Dismiss and Strike Plaintiff's Class Allegations.

Dated:  July 18, 2018.

 /s/ *Misty L. Peterson* (*admitted pro hac vice*)
MATTHEW H. DAWSON (SBN 307350)
mdawson@kslaw.com
King & Spalding LLP
601 South California Avenue
Palo Alto, CA 94304
Telephone:      +1 650 422 6700
Facsimile:      +1 650 422 6800

ZACHARY A. MCENTYRE (*pro hac vice*)
zmcentyre@kslaw.com
MISTY L. PETERSON (*pro hac vice*)
mpeterson@kslaw.com
BILLIE B. PRITCHARD (*pro hac vice*)

bpritchard@kslaw.com
KING & SPALDING LLP
1180 Peachtree Street NE
Atlanta, GA 30309
Telephone:     +1 404 572 4600
Facsimile:      +1 404 572 5100

Attorneys for Defendant
EQUIFAX INFORMATION SERVICES LLC

**CERTIFICATE OF SERVICE**

**Kellie Gadomski v. Equifax Information Services LLC**

**Case No: 2:17-cv-00670-TLN-AC**

I, the undersigned, certify and declare that I am over the age of 18 years, employed in the County of Fulton, State of Georgia, and not a party to the above-entitled cause.

On July 18, 2018, I served a true copy of **DEFENDANT EQUIFAX INFORMATION SERVICES LLC'S PARTIAL MOTION TO DISMISS AND TO STRIKE CLASS ALLEGATIONS**

[ ]     By personally delivering it to the persons(s) indicated below in the manner as provided in Federal Rule of Civil Procedure 5(B);

[]     By depositing it in the United States Mail in a sealed envelope with the postage thereon fully prepaid to the following:

[X]     By ECF: On this date, I electronically filed the following document(s) with the Clerk of the Court using the CM/ECF system, which sent electronic notification of such filing to all other parties appearing on the docket sheet:

I declare under penalty of perjury that the above is true and correct (and that I am admitted in this case *pro hac vice* by this Court at whose direction the service was made). Executed on this 18th day of July, 2018 in Atlanta, Georgia.

 /s/ *Misty L. Peterson* (*admitted pro hac vice*)

MISTY L. PETERSON