**KAZEROUNI LAW GROUP, APC**
Abbas Kazerounian, Esq. (249203)
ak@kazlg.com
Matthew M. Loker, Esq. (279939)
ml@kazlg.com
245 Fischer Avenue, Unit D1
Costa Mesa, CA 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

**HYDE & SWIGART**
Joshua B. Swigart, Esq. (225557)
josh@westcoastlitigation.com
2221 Camino Del Rio South, Suite 101
San Diego, CA 92108
Telephone: (619) 233-7770
Facsimile: (619) 297-1022

*Attorneys for Plaintiff,*
Kellie Gadomski

### UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF CALIFORNIA

**KELLIE GADOMSKI, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,**

**Plaintiff,**

**v.**

**EQUIFAX INFORMATION SERVICES LLC,**

**Defendant.**

**Case No.:** 17-cv-670-TLN-AC

**PLAINTIFF KELLIE GADOMSKI'S OPPOSITION TO DEFENDANT EQUIFAX INFORMATION SERVICES LLC'S PARTIAL MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT AND STRIKE PLAINTIFF'S CLASS ALLEGATIONS**

**DATE:** August 23, 2018
**TIME:** 2:00 P.M.
**JUDGE:** HON. TROY L. NUNLEY
**CRTRM:** 2

C.O. LAW, APC
3148 MIDWAY DR., SUITE 203
SAN DIEGO, CA 92110

# TABLE OF CONTENTS

PAGE(S)

I.   INTRODUCTION .................................................................................. 1

II.  LEGAL STANDARD ............................................................................ 1

III. ARGUMENT ....................................................................................... 3

    A. EQUIFAX IMPERMISSIBLY CONTRADICTS PLAINTIFF'S ALLEGATIONS TO SUPPORT DEFENDANT'S MOTION ................................ 3

    B. PLAINTIFF SUFFICIENTLY ALLEGES THAT EQUIFAX LACKS REASONABLE PROCEDURES TO ASSURE MAXIMUM POSSIBLE ACCURACY ...................... 5

        I.   PLAINTIFF SUFFICIENTLY ALLEGED THAT WELLS FARGO IS AN UNRELIABLE SOURCE ....................................................... 7

        II.  EQUIFAX'S MOTION IGNORES PLAINTIFF'S POST-FCRA DISPUTE §1681e(b) ALLEGATIONS ........................................ 8

    C. PLAINTIFF SUFFICIENTLY ALLEGES THAT EQUIFAX'S VIOLATIONS OF §1681e(b) WERE WILLFUL ................................................... 12

    D. EQUIFAX'S MOTION TO STRIKE CLASS ALLEGATIONS SHOULD BE DENIED AS IMPROPER AND PREMATURE .................................................. 15

        I.   THIS COURT ALREADY ADDRESSED AND REJECTED EQUIFAX'S ATTEMPT TO STRIKE PLAINTIFF'S CLASS ACTION ALLEGATIONS IN ITS PREVIOUS ORDER ................. 16

        II.  JURISDICTION OVER EQUIFAX IS PROPER ............................ 16

IV.  CONCLUSION .................................................................................. 20

C.O. LAW, APC
3148 MIDWAY DR., SUITE 203
SAN DIEGO, CA 92110

# TABLE OF AUTHORITIES

**CASES**                                                                 **PAGE(S)**

*Ashcroft v. Iqbal,*
    556 U.S. 662, 663 (2009) ..................................................................... 4

*Bell Atl. Corp. v. Twombly*
    550 U.S. 555 (S. Ct. 2007) ............................................................ 2, 3, 4

*Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*
    137 S.Ct. 1773 (2017) ............................................................... 16, 17

*Brown v. Defender Sec. Co.*
    2012 WL 5308964 (C.D. Cal. Oct. 22, 2012) ....................................... 2

*Campbell v. Chase Manhattan Bank*
    2005 WL 1514221 (D. N.J. June 27, 2005) ......................................... 8

*Delino v. Platinum Cmty. Bank,*
    628 F. Supp. 2d 1230 (S.D. Cal. 2009) ............................................... 1

*Dennis v. BEH-1, LLC*
    520 F.3d 1071 (9th Cir. 2008). ................................................... 12, 13

*Gen. Tel. Co. of the Sw. v. Falcon,*
    457 U.S. 147, 155, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982).) ......................... 18

*Goodyear Dunlop Tires Operations, S.A. v. Brown,*
    564 U.S. 915, 919 (2011) ................................................................. 17

*Grigoryan v. Experian Information Solutions, Inc.,*
    84 F.Supp.3d 1058 (C.D. Cal. 2014) ................................................... 9

*In re Jiffy Lube Int'l, Inc., Text Spam Litig.,*
    847 F. Supp. 2d 1253, 1256 (S.D. Cal. 2012) ..................................... 4

*Iniguez v. The CBE Group,*
    F. Supp. 2d. --, 2013 WL 4780785 (S.D. Cal. Sept. 5, 2013) ................. 3

*Jackson v. Carey,*
    353 F.3d 750, 755 (9th Cir. 2003). ..................................................... 2

C.O. LAW, APC
3148 MIDWAY DR., SUITE 203
SAN DIEGO, CA 92110

*Khorrami v. Lexmark Intern. Inc.*
    2007 WL 8031909, *2 (C.D. Cal. 2007) ................................................................. 3

*Lyons v. Coxcom, Inc.*
    718 F. Supp. 2d 1232, 1235-36 (S.D. Cal. 2009) .................................................... 3

*McDougal v. County of Imperial*
    942 F.2d 676 (9th Cir. 1991) ................................................................................... 2

*Molock v. Whole Foods Mkt., Inc.*
    2018 WL 1342470 (D.D.C. Mar. 15, 2018) .................................................... 17, 18

*Myers v. Bennett Law Offices,*
    238 F.3d 1068, 1073 (9th Cir. 2001) ..................................................................... 17

*Myrick v. Equifax Info. Servs., LLC,*
    2017 WL 4798154 (E.D.N.C. Oct.24, 2017) ................................................... 13, 14

*N.L. Indus., Inc. v. Kaplan*
    792 F.2d 898 (9th Cir. 1986) .............................................................................. 1, 4

*Parks Sch. of Bus., Inc. v. Symington,*
    51 F.3d 1484 (9th Cir. 1995) ............................................................................... 1, 4

*Puttner v. Debt Consultants of Am.,*
    2009 U.S. Dist. LEXIS 48163 (S.D. Cal. June 4, 2009) ......................................... 1

*Sarver v. Experian Info. Sols.*
    390 F.3d 969, 972 (7th Cir. 2004) .......................................................................... 9

*Robbins v. CitiMortgage, Inc.,*
    2017 U.S. Dist. LEXIS 209367 (N.D. Cal. Dec. 20, 2017) .................................. 12

*Saindon v. Equifax Info. Serv.*
    608 F. Supp. 2d 1212 (N.D. Cal. 2009) ............................................................ 8, 11

*Sarver v. Experian Info. Sols.*
    390 F.3d 969, 972 (7th Cir. 2004) .......................................................................... 9

C.O. LAW, APC
3148 MIDWAY DR., SUITE 203
SAN DIEGO, CA 92110

*Sheppard v. David Evans & Assoc.*
　　694 F.3d 1045, 1049 (9th Cir. 2012) ................................................................. 4

*Simpson v. Ramada Worlwide*
　　2012 WL 5988644 (N.D. Cal. Nov. 29, 2012)...................................................... 2

*Wright v. Experian Info. Sols., Inc.,*
　　805 F.3d 1232, 1241 (10th Cir. 2015) ................................................................. 9


**STATUTES**　　　　　　　　　　　　　　　　　　　　　　　　　　　　　**PAGE(S)**

Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, et seq............................*passim*


**OTHER AUTHORITIES**　　　　　　　　　　　　　　　　　　　　　　　　**PAGE(S)**

Fed. R. Civ. P. R. 23 et seq. ....................................................................................*passim*

FTC Staff Summary Section 607(b)................................................................................ 8

C.O. LAW, APC
3148 MIDWAY DR., SUITE 203
SAN DIEGO, CA 92110

C.O. LAW, APC
3148 MIDWAY DR., SUITE 203
SAN DIEGO, CA 92110

## I.   **INTRODUCTION**

Defendant EQUIFAX INFORMATION SERVICES, LLC. ("Equifax" or "Defendant") provides no justification for its Motion to Dismiss Plaintiff's First Amended Complaint and Motion to Strike Class Allegations (ECF No. 30— "Motion") regarding Plaintiff KELLIE GADOMSKI's ("Plaintiff") claims under the Fair Credit Reporting Act, 15 U.S.C. § 1681, et seq. ("FCRA"). In fact, Defendant's arguments are all without merit, misconstrue and/or ignore key allegations in Plaintiff's First Amended Complaint ("FAC"), and are premature. Based upon the flaws in Defendant's Motion, Plaintiff respectfully requests the Court deny Defendant's Motion in its entirety. [1] However, in the event that this Court grants Defendant's Motion, in whole or in part, Plaintiff respectfully requests leave to amend in order to cure Plaintiff's operative pleading of any perceived deficiencies.

## II.   **LEGAL STANDARD**

Equifax presents two different Motions to this Court; thus, each applicable standard will be discussed in turn below.

### A.   MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(6)

"A motion to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint." *Delino v. Platinum Cmty. Bank*, 628 F. Supp. 2d 1226, 1230 (S.D. Cal. 2009). The court must accept as true all material allegations in the complaint, as well as reasonable inferences to be drawn from them, and must construe the complaint in the light most favorable to plaintiffs. *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995); *N.L. Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986). To survive a motion to dismiss, a plaintiff need only allege facts that are enough to raise his or her right to relief "above the speculative level." *Bell Atl. Corp. v.*

---

[1] Defendant is *not* seeking to dismiss Plaintiff's individual claims under § 1681i(a). (*See* Defendant's Motion FN1).

**PLAINTIFF KELLIE GADOMSKI'S OPPOSITION TO DEFENDANT EQUIFAX INFORMATION SERVICES LLC'S PARTIAL MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT AND TO STRIKE PLAINTIFF'S CLASS ALLEGATIONS**

*Twombly*, 550 U.S. 544, 555 (S. Ct. 2007).

The court looks not at whether the plaintiff "will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Jackson v. Carey*, 353 F.3d 750, 755 (9th Cir. 2003). A complaint may not be dismissed for failure to state a claim where the allegations plausibly show that the pleader is entitled to relief. *Puttner v. Debt Consultants of Am.*, 2009 U.S. Dist. LEXIS 48163 *8 (S.D. Cal. June 4, 2009). On a Rule 12(b)(6) motion, the court does not "[r]equire heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (S. Ct. 2007). In the Ninth Circuit, the Rule 12(b)(6) motion is viewed with disfavor and is rarely granted. *McDougal v. County of Imperial*, 942 F.2d 668, 676 n.7 (9th Cir. 1991).

For all of these reasons, it is only under extraordinary circumstances that dismissal is proper under Rule 12(b)(6). *Brown v. Defender Sec. Co.*, 2012 WL 5308964 *2 (C.D. Cal. Oct. 22, 2012) (citing *United States v. City of Redwood City*, 640 F.2d 963, 966 (9th Cir. 1981). As a general rule, leave to amend a complaint, which has been dismissed, should be freely granted. Fed. R. Civ. P. 15(a).

### B. MOTION TO STRIKE CLASS ALLEGATIONS

Pursuant to Rule 23(d)(1)(D), a court may "strike allegations if the complaint plainly reflects that a class action cannot be maintained." *Simpson v. Ramada Worlwide*, 2012 WL 5988644, *2 (N.D. Cal. Nov. 29, 2012). The court must view the pleadings in the light most favorable to the non-moving party, and "motions should only be granted when the complaint has obvious defects that cannot be cured through the class discovery and class certification process." *Id.* (citing *In re Wal-Mart Stores, Inc., Wage & Hour Litig.*, 505 F. Supp. 2d 609, 615 (N.D. Cal. 2007)); *see also Roberts v. Wyndham Intern., Inc.*, 2012 WL 6001459, *3 (N.D. Cal. Nov. 30, 2012). "Dismissing class allegations in the pleading stage, however, is rare because the

C.O. LAW, APC
3148 MIDWAY DR., SUITE 203
SAN DIEGO, CA 92110

parties have not yet engaged in discovery and the shape of a class action is often driven by the facts of a particular case." *Iniguez v. The CBE Group*, -- F. Supp. 2d. --, 2013 WL 4780785, *6 (S.D. Cal. Sept. 5, 2013).

Moreover, "motions to strike class allegations are generally disfavored because 'a motion for class certification is a more appropriate vehicle.'" *Lyons v. Coxcom, Inc.*, 718 F. Supp. 2d 1232, 1235-36 (S.D. Cal. 2009) (citing *Thorpe v. Abbott Lab., Inc.*, 534 F. Supp. 2d 1120, 1125 (N.D. Cal. 2008). "Because striking [class allegations] is severe and disfavored, many courts have declined to so rule solely on the basis of the allegations in a complaint, preferring to address the propriety of the class action at a later stage in the litigation." *Khorrami v. Lexmark Intern. Inc.*, 2007 WL 8031909, *2 (C.D. Cal. 2007).

## III.   <u>ARGUMENT</u>

Defendant's Motion should be denied because (A) Defendant impermissibly contradicts Plaintiff's allegations to support Defendant's Motion; (B) Plaintiff sufficiently alleges that Equifax lacks reasonable procedures to assure maximum possible accuracy under the FCRA; (C) Plaintiff sufficiently alleges that Equifax's violations of the FCRA were willful; and, (D) Defendant's Motion to Strike Class Allegations should be denied as improper and premature.

### A. Equifax Impermissibly Contradicts Plaintiff's Allegations To Support Defendant's Motion.

In order to survive a 12(b)(6) motion, a complaint only needs "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 548 (U.S. 2007). "Asking for plausible grounds does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" of the illegality claimed in the complaint. *Id.* at 545. "A claim has facial plausibility when the

C.O. LAW, APC
3148 MIDWAY DR., SUITE 203
SAN DIEGO, CA 92110

1  pleaded factual content allows the court to draw the reasonable inference that the
2  defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663
3  (2009).  In "determining whether a complaint states a plausible claim is context-
4  specific, requiring the reviewing court to draw on its experience and common
5  sense." *Id.* at 663-64.  To survive a 12(b)(6) motion, "[f]actual allegations must be
6  enough to raise a right to relief above the speculative level." *In re Jiffy Lube Int'l,*
7  *Inc., Text Spam Litig.*, 847 F. Supp. 2d 1253, 1256 (S.D. Cal. 2012) (citing. *Bell Atl.*
8  *Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

9       Moreover, Federal Rule of Civil Procedure 8(a)(2) requires only "a short and
10  plain statement of the claim showing that the pleader is entitled to relief," in order to
11  "give the defendant fair notice of what the ... claim is and the grounds upon which it
12  rests[.]" *Twombly*, 550 U.S. at 545 (citing. *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).
13  A "judge ruling on a defendant's motion to dismiss a complaint 'must accept as true
14  all of the factual allegations contained in the complaint.'" *Id.* at 572.

15       Throughout Defendant's Motion, Defendant is only able to support the
16  assertions therein by directly contradicting Plaintiff's factual allegations.  For
17  example, Defendant misstates Plaintiff's factual allegations regarding Defendant's
18  procedures (Defendant's Motion, 7:7-15); and, falsely claims that this is single error
19  as opposed to a class (*See, e.g.*, Defendant's Motion, 2:26-28).  Plaintiff has plead
20  facts directly to the contrary and Defendant is precluded from challenging these
21  facts at this time.  As stated above, Plaintiff's allegations must be taken as true at
22  this juncture.  *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir.
23  1995); *N.L. Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986).  Therefore,
24  Defendant's attempt to contradict Plaintiff's SAC is wholly improper and should
25  not be considered by this Court.  *See Sheppard v. David Evans & Assoc.*, 694 F.3d
26  1045, 1049 (9th Cir. 2012).  In accepting the assertions in Plaintiff's FAC as true, it

**PLAINTIFF KELLIE GADOMSKI'S OPPOSITION TO DEFENDANT EQUIFAX INFORMATION SERVICES LLC'S PARTIAL MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT AND TO STRIKE PLAINTIFF'S CLASS ALLEGATIONS**

C.O. LAW, APC
3148 MIDWAY DR., SUITE 203
SAN DIEGO, CA 92110

is apparent that Defendant has violated the FCRA. If Defendant wishes to challenge these allegations, Defendant must do so at the Summary Judgment stage.

### B. PLAINTIFF SUFFICIENTLY ALLEGES THAT EQUIFAX LACKS REASONABLE PROCEDURES TO ASSURE MAXIMUM POSSIBLE ACCURACY UNDER THE FCRA

Equifax first argues in their Motion that Plaintiff failed to plausibly allege that Equifax lacks reasonable procedures to assure maximum possible accuracy in consumer reports.[2] In doing so, Equifax misconstrues several allegations of Plaintiff's First Amended Complaint ("FAC") and ignores other allegations that were specifically added to address and cure the deficiencies raised in this Court's Order Granting in Part and Denying in Part Defendant's Motion to Dismiss and Strike Plaintiff's Class Allegations (ECF No. 26—the "Order").

In their Motion, Defendant argues:

> "Plaintiff cannot plausible contend, on the one hand, that Equifax lacks "reasonable procedures" for collecting bankruptcy information while alleging, on the other hand, that Equifax already implements the "procedure" Plaintiff (wrongly) argues that the FCRA requires. On that basis alone, her claims under § 1681e(b) fails as a matter of law."

Defendant's Motion at 8:11-15.

However, this patently distorts Plaintiff's allegations. Plaintiff alleges that Equifax *affirmatively* seeks out and obtains public record data from third-party vendors like LexisNexis, who sends each CRA, including Equifax, between ten and twenty million public records annually—one-third of which are bankruptcies.[3] FAC

---

[2] Equifax does not dispute that the information reported on Plaintiff's credit report was inaccurate. *See* Defendant's Motion at 7.

[3] Consumer Fin. Prot. Bureau, Key Dimensions and Processes in the U.S. Credit Reporting System: A review of how the nation's largest credit bureaus manage consumer data 17 (2012).

**PLAINTIFF KELLIE GADOMSKI'S OPPOSITION TO DEFENDANT EQUIFAX INFORMATION SERVICES LLC'S PARTIAL MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT AND TO STRIKE PLAINTIFF'S CLASS ALLEGATIONS**

C.O. LAW, APC
3148 MIDWAY DR., SUITE 203
SAN DIEGO, CA 92110

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

¶79; *see also* ¶¶77-78, 131, 150. Plaintiff also alleges that Equifax, as part of its regular policies and procedures, regularly obtains information of each and every filing and discharge date of a bankruptcy court proceeding from PACER and LexisNexis, but in Plaintiff's case (and those similarly situated), Equifax did not accurately record this information in the public records section of her credit report. FAC ¶129. Notably, Experian and TransUnion reported Plaintiff's Bankruptcy in the "Public Records" sections of their respective credit reports for Plaintiff during the same reporting time frame, which further bolsters the claim that Equifax failed to adopt reasonable procedures to ensure maximum possible accuracy. FAC ¶130.

In other words, Equifax has proactively decided to acquire information related to public bankruptcy records for consumers as a business policy to comply with the reasonable procedures requirement of the FCRA. However, they have failed to *implement* that procedure fairly and consistently for *all* pertinent debtors Defendant maintains consumer files for, including Plaintiff. Again, TransUnion and Experian had no problem reporting the public record of Plaintiff's Bankruptcy, yet Equifax did. Equifax even concedes that a reasonable procedure to assure maximum possible accuracy under the FCRA includes relying on LexisNexis to provide accurate information. Defendant's Motion at 2:1-6.

However, it is premature at this stage of litigation, without the benefit of discovery, to determine if Equifax's failure to report the Bankruptcy on Plaintiff's credit report was a one-time mistake, or if there is a systematic failure on Equifax's part to report consumer bankruptcies in the "Public Records" section of the reports they generate for consumers. The fact that Equifax failed to update the "Public Records" section of Plaintiff's credit report to show the Bankruptcy *following* Plaintiff's §1681i dispute reinforces Plaintiff's argument that Equifax's shortcomings under §1681e(b) was not simply a "one-off error." FAC ¶146.

**PLAINTIFF KELLIE GADOMSKI'S OPPOSITION TO DEFENDANT EQUIFAX INFORMATION SERVICES LLC'S PARTIAL MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT AND TO STRIKE PLAINTIFF'S CLASS ALLEGATIONS**

Through discovery, Plaintiff can examine Equifax's business practices, patterns of conduct, and policies (e.g., how diligently Equifax pursues reporting public records of bankruptcies for all relevant debtors after already proactively deciding to subscribe to receive such information through PACER and LexisNexis, how Defendant responds to consumer disputes that inform Equifax that they had bankruptcies and thus outstanding debts were discharged, how Equifax documents such information and investigations, etc.), to confirm if the class action allegations are appropriate in this matter.

### i. PLAINTIFF SUFFICIENTLY ALLEGED THAT WELLS FARGO IS AN UNRELIABLE SOURCE.

Equifax then argues Plaintiff did not sufficiently allege a §1681e(b) violation because Wells Fargo is a presumptively reliable source of information. Defendant's Motion at 9:1-2. However, Plaintiff's FAC alleges over the past several years, thousands of consumers have written dispute letters to Equifax requesting that Equifax correct their erroneous reporting of discharged debts as due and owing because those debts had, in fact, been discharged in bankruptcy and have named Wells Fargo as the furnisher of the inaccurate reporting. FAC ¶91. However, in response to such disputes, Equifax frequently continued to falsely report those debts as due and owing, despite the fact that publicly available bankruptcy court records show the debts at issue had been discharged. *Id.*

As a result, there have been thousands of consumer complaints to regulators and agencies such as the Better Business Bureau, Federal Trade Commission, and Consumer Financial Protection Bureau, as well as lawsuits filed against Wells Fargo and Equifax based on identical reporting violations as those discussed in the FAC. FAC ¶92. Accordingly, Equifax knows, or should know, that the information creditors like Wells Fargo furnish regarding the status of pre-bankruptcy debts is highly unreliable and that its procedures for reporting such debts therefore

**PLAINTIFF KELLIE GADOMSKI'S OPPOSITION TO DEFENDANT EQUIFAX INFORMATION SERVICES LLC'S PARTIAL MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT AND TO STRIKE PLAINTIFF'S CLASS ALLEGATIONS**

C.O. LAW, APC
3148 MIDWAY DR., SUITE 203
SAN DIEGO, CA 92110

fail to assure "maximum possible accuracy" under the FCRA. *Id.* An indicator of furnisher's unreliability can be frequent consumer complaints to regulators or other agencies, or information from third parties. *See, e.g., Saindon v. Equifax Info. Serv.*, 608 F. Supp. 2d 1212 (N.D. Cal. 2009). Furthermore, the reliability of a CRA's source is a question of fact. *Campbell v. Chase Manhattan Bank*, 2005 WL 1514221 (D. N.J. June 27, 2005).

These allegations, taken as true, show that Equifax knew or should have known about Wells Fargo's systematic errors in reporting inaccurate information about consumers and the FTC Staff Summary requires a CRA in Equifax's position to require Wells Fargo to revise their procedures or Equifax must stop reporting information from Wells Fargo.[4] These systematic errors also show that Wells Fargo is an unreliable source of this information. Defendant is free to challenge these allegations at the Summary Judgment stage; however, said challenges are inappropriate at this time. Thus, Defendant's Motion should be denied.

### ii. Equifax Ignores Plaintiff's Post-FCRA Dispute §1681e(b) Allegations

It is important to note that Equifax attempts to inaptly conflate all of Plaintiff's §1681e(b) allegations in the context of their reporting *prior* to Plaintiff's FCRA dispute. However, even if this Court is persuaded by Equifax's argument that it had no reason to *initially* question the accuracy of Wells Fargo's reporting, Plaintiff's §1681e(b) allegations relate to Equifax's failure to maintain reasonable procedures both before *and* after Plaintiff's formal FCRA dispute under §1681i of the FCRA. As Equifax's own Motion states (*see* 9:1-6), "as a matter of law, a credit reporting agency is not liable under the FCRA for reporting inaccurate

---

[4] FTC Staff Summary § 607(b) item 3.

C.O. LAW, APC
3148 MIDWAY DR., SUITE 203
SAN DIEGO, CA 92110

information obtained from a [presumptively reliable source], **absent prior notice** . . . that the information may be inaccurate." *Wright v. Experian Info. Sols., Inc.*, 805 F.3d 1232, 1241 (10th Cir. 2015) (quotation omitted); *accord Sarver v. Experian Info. Sols.*, 390 F.3d 969, 972 (7th Cir. 2004) ("**In the absence of notice** of prevalent unreliable information from a reporting lender, which would put [a CRA] on notice that problems exist, we cannot find that such a requirement to investigate would be reasonable. . . .") (emphasis added). Indeed, when a consumer makes a dispute, the CRA has been made aware of inaccurate information and it may no longer blindly parrot the furnisher. *Grigoryan v. Experian Info. Solutions*, 84 F. Supp. 3d 1044, 1068–1069 (C.D. Cal. 2014) (pro se; CRA entitled to initially rely upon credible evidence from reliable sources, but once consumer disputed, reliability of furnishers did not justify CRA's sole reliance on them).[5]

Plaintiff alleges she disputed Wells Fargo's reporting of a "Charged Off" pay status, despite the fact Wells Fargo's debt was discharged, on or about November 2016 by notifying Equifax in writing that the status should have reported as "discharged through bankruptcy" or the equivalent (the "Dispute").

---

[5] *See also Bradshaw v. BAC Home Loans Serv.*, L.P., 816 F. Supp. 2d 1066 (D. Or. 2011) (once "CRA is affirmatively on notice that information received from a creditor may be suspect, it is unreasonable as a matter of law for the agency to simply verify the creditor's information through the ACDV process without additional investigation"); *Burke v. Experian Info. Serv.*, 2011 WL 1085874, at *7 (E.D. Va. Mar. 18, 2011) (while CRA need not go beyond original source in collection of information, once information is challenged as inaccurate, CRA subject to greater duty of care); *Lee v. Security Check, L.L.C.*, 2010 WL 3075673 (M.D. Fla. Aug. 5, 2010) (reasonable procedures for assuring maximum possible accuracy are different when reinvestigating disputed information); *Hintz v. Experian Info. Solutions, Inc*., 2010 WL 4025061 (E.D. Va. Oct. 13, 2010); *Elsady v. Rapid Global Bus. Solutions, Inc.*, 2010 WL 742852 (E.D. Mich. Feb. 26, 2010) (when a CRA has "sufficient prior notice of a dispute . . . it cannot merely accept at face value the information that is reported to it"); *Lambert v. Beneficial Mortg. Corp.*, 2007 WL 1309542 (W.D. Wash. May 4, 2007) (once dispute is raised, CRA can no longer relay information from the original source without more; to do so would render sections 1681e(b) and 1681i(a) duplicative and statutory language superfluous).

**PLAINTIFF KELLIE GADOMSKI'S OPPOSITION TO DEFENDANT EQUIFAX INFORMATION SERVICES LLC'S PARTIAL MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT AND TO STRIKE PLAINTIFF'S CLASS ALLEGATIONS**

C.O. LAW, APC
3148 MIDWAY DR., SUITE 203
SAN DIEGO, CA 92110

FAC ¶¶138-139. Plaintiff's Dispute also included her Bankruptcy Case Number, the fact it was filed in the Eastern District of California (Sacramento), as well as the filing and discharge dates. *Id.* Following their reinvestigation, Equifax continued to report the status of the Wells Fargo account (the "Account") as "Charged Off" rather than "Discharged" and there was again no notation, status update, or any other indication in the Account's tradeline that it was discharged in Plaintiff's Bankruptcy. *Id.* at ¶¶145-146. Equifax's reinvestigation also once again omitted the Bankruptcy in the "Public Records" section of Plaintiff's report, despite Plaintiff providing the case number of the Bankruptcy in her dispute. *Id.* Plaintiff also alleges that Equifax's reinvestigation was not reasonable because had Equifax reviewed the Dispute, they could have easily ascertained the Account was discharged in Plaintiff's Bankruptcy by reviewing the Bankruptcy's docket, consulting with PACER and/or LexisNexis to determine that Plaintiff had a successful bankruptcy discharge, and reviewing Metro 2 reporting instructions to confirm the correct way to report the Account's status was "Discharged in Bankruptcy." *Id.* at ¶¶148-150.

Instead, Equifax "doubled-down" on their original inaccurate and misleading reporting by reporting that the current (pay) status of the Account, following their November/December 2016 FCRA reinvestigation, was "Charged Off", as opposed to "Discharged in Bankruptcy" and again failing to report Plaintiff's bankruptcy in the "Public Records" section of Plaintiff's Equifax Report. *Id.* at ¶151. Plaintiff alleged this conduct not only violated Equifax's reasonable reinvestigation requirements of §1681i of the FCRA, but it also violated Equifax's duty to follow reasonable procedures to assure maximum possible accuracy under §1681e(b) of the FCRA. *Id.* at ¶¶152-153.

In other words, Equifax's failure to conduct a reasonable reinvestigation of Plaintiff's (and those similarly situated) dispute under §1681i subjected Equifax to

independent liability under §1681e(b) as well.[6] As the court in *Saindon v. Equifax Info. Serv.* in the Northern District of California described:

> In its motion and declarations, [Equifax] does lay out a string of application procedures that include both automated and manual checks by the agency. But giving all reasonable inferences to the plaintiff, the monitoring and reinvestigation procedures could be seen as quite limited. The procedures could be seen by a jury as merely basic automated checks that catch missing data fields on submitted forms, which do not go to the heart of whether a source of information is trustworthy. For example, when a consumer files a complaint contesting the accuracy of an item on his or her credit report, the sole action taken by Equifax is to contact the source of the information to verify if it is accurate. If the source says that it is, the inquiry ends . . . This does virtually nothing to determine the actual credibility of the source—which is what plaintiff asserts is lacking—or so a jury could reasonable conclude. While defendant does have some procedures that include a manual review of some disputes, a jury could reasonably find that almost none of the procedures include a review of the integrity of the information source itself.

*Saindon v. Equifax Info. Serv.*, 608 F. Supp. 2d 1212, 1217 (N.D. Cal. 2009).

---

[6] *Saindon v. Equifax Info. Serv.*, 608 F. Supp. 2d 1212 (N.D. Cal. 2009). *See also* Carlisle v. Nat'l Commercial Services, Inc., 2016 WL 4544368, at *7 (N.D. Ga. July 22, 2016), adopted, 2016 WL 4532219 (N.D. Ga. Aug. 29, 2016) (when consumer disputes and CRA conducts cursory investigation, reporting of same dispute information could violate § 1681e(b)); *Lazarre v. JP Morgan Chase Bank (Lazarre II)*, 780 F. Supp. 2d 1330 (S.D. Fla. 2011) (under some circumstances, violation of § 1681i(a) logically entails violation of § 1681e(b); CRA that conducts unreasonably cursory reinvestigations would not be following reasonable procedures to ensure maximum possible accuracy); *Burke v. Experian Info. Serv.*, 2011 WL 1085874, at *7 (E.D. Va. Mar. 18, 2011) (CRA could be liable for § 1681e(b) violation for failing to conduct reasonable investigation); Campbell v. Experian Info. Solutions, Inc., 2009 WL 3834125 (W.D. Mo. Nov. 13, 2009); *Gorman v. Experian Info. Solutions, Inc.*, 2008 WL 4934047 (S.D.N.Y. Nov. 19, 2008).

**PLAINTIFF KELLIE GADOMSKI'S OPPOSITION TO DEFENDANT EQUIFAX INFORMATION SERVICES LLC'S PARTIAL MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT AND TO STRIKE PLAINTIFF'S CLASS ALLEGATIONS**

C.O. LAW, APC
3148 MIDWAY DR., SUITE 203
SAN DIEGO, CA 92110

Accordingly, Plaintiff's §1681e(b) allegations against Equifax *before* the Dispute should be examined separately from Plaintiff's §1681e(b) allegations against Equifax following the Dispute.

### C. PLAINTIFF SUFFICIENTLY ALLEGES THAT EQUIFAX'S VIOLATIONS OF §1681e(b) WERE WILLFUL

"[W]illfulness under the FCRA 'cover[s] not only known violations of [the statute], but reckless ones as well.'" *Robbins v. CitiMortgage, Inc.*, No. 16-cv-4732 LHK, 2017 U.S. Dist. LEXIS 209367, at *53 (N.D. Cal. Dec. 20, 2017).

Equifax next argues in their Motion that Plaintiff did not sufficiently plead willfulness. Specifically, Equifax contends the FCRA does not require Equifax to review PACER records before generating consumer reports. Defendant's Motion 11:4-18. Once again, Equifax only focuses on Plaintiff's §1681e(b) allegations prior to her formal Dispute and ignores Ninth Circuit authority holding otherwise. "A CRA "must exercise reasonable diligence in examining" a public record to determine when an inaccuracy has been reported." *Dennis v. BEH-1, LLC*, 520 F.3d 1066, 1071 (9th Cir. 2008). In *Dennis v. BEH-1, LLC*, the plaintiff's dispute arose from a previous case where he was sued for unlawful detainer; he settled in exchange for dismissal, among other things. *Id.* at 1068. Experian subsequently prepared a consumer report about the Plaintiff, indicating that he was subject to a "Civil Claim judgment" entered against him in that case. *Id.* After the consumer notified Experian that he disputed the information, Experian confirmed the information with its public records vendor, who originally furnished the incorrect information. *Id.* The furnisher confirmed the disputed information as accurate; Experian declined to update/correct the disputed information. *Id.* The Ninth Circuit reversed summary judgment in Experian's favor, and concluded that remand for judgment would be pointless because:

C.O. LAW, APC
3148 MIDWAY DR., SUITE 203
SAN DIEGO, CA 92110

no rational jury could find that [Experian] wasn't negligent. The stipulation [for dismissal] Hogan retrieved from Dennis's court file may be unusual, but it's also unambiguous, and Experian was negligent in mis-interpreting it as an entry of judgment. Experian is also responsible for the negligence of Hogan, the investigation service it hired to review Dennis's court file. Hogan appears to have overlooked the legal significance of the Request for Dismissal and the Register entry showing that the case against Dennis was dismissed.

*Id.* at 1070.

In entering judgment in favor of Plaintiff, this Court emphasized that the "case illustrates how important it is for Experian, a company that traffics in the reputations of ordinary people, to train its employees to understand the legal significance of the documents they rely on." *Id.* at 1071.

This is especially true where the "information [a CRA] did possess in its records would have enabled it to confirm the status of the [disputed tradelines] through an identified source, i.e., PACER."

*Myrick v. Equifax Info. Servs., LLC,* 2017 WL 4798154, at *3 (E.D.N.C. Oct. 24, 2017). In *Myrick,* the plaintiff disputed Equifax's reporting of an open account balance, a past due balance, and late payment history reporting on an account he included in and discharged pursuant to his Chapter 13 bankruptcy.[7] Equifax's initial consumer disclosure and subsequent reinvestigation did not reflect the fact of the discharge on the tradeline for the disputed account information. *Id.* The plaintiff disputed the accuracy of this information in light of his Chapter 13 discharge. *Id.*

---

[7]  *Myrick,* 2017 WL 3324467, at *1 (E.D.N.C. Aug. 3, 2017), *on reconsideration,* 2017 WL 4798154 (E.D.N.C. Oct. 24, 2017). This case was decided after summary-judgment briefing closed.

**PLAINTIFF KELLIE GADOMSKI'S OPPOSITION TO DEFENDANT EQUIFAX INFORMATION SERVICES LLC'S PARTIAL MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT AND TO STRIKE PLAINTIFF'S CLASS ALLEGATIONS**

C.O. LAW, APC
3148 MIDWAY DR., SUITE 203
SAN DIEGO, CA 92110

In *Myrick*, the court initially reasoned that a jury could find that Equifax's exclusive reliance on information that the furnisher provided was unreasonable, and it did not find that the record supported finding that Equifax's conduct rose to a willful violation of its reinvestigation duties. *Id.* at 7. However, on reconsideration, the court concluded that Equifax possessed information in its records sufficient to confirm the status of the disputed account through PACER's bankruptcy records for the plaintiff.  2017 WL 4798154 at *2 (emphasizing "Equifax's admission that it received notice of both the bankruptcy court's discharge and the bankruptcy court case number from Lexis-Nexis, it public records vendor."). Taken together with the fact that Equifax cabined the scope of its reinvestigation to information it received from the furnisher in the ACDV response, the court amended its prior holding, and held that the issue of whether Equifax willfully violated its reinvestigation duties was a fact in dispute properly before a jury. *Id.* at *3.

Similarly here, Plaintiff alleges the information Equifax possessed in its records would have enabled it to confirm the status of the Account through an identified source, i.e., LexisNexis and/or PACER. *See e.g.* FAC ¶¶77-79, 129, 131. Plaintiff alleged Equifax, as part of its regular policies and procedures, regularly obtains information of each and every filing and discharge date of a bankruptcy court proceeding from PACER and/or LexisNexis, but in Plaintiff's case (and those similarly situated), Equifax did not accurately report this information in the public records section of their credit reports.  FAC ¶129. Notably, Experian and TransUnion reported Plaintiff's Bankruptcy in the "Public Records" sections of their respective credit reports for Plaintiff during the same reporting time frame, which further bolsters the claim that Equifax failed to adopt reasonable procedures to ensure maximum possible accuracy. FAC ¶130.

Then, Plaintiff lodged her Dispute with Equifax on or about November 2016, which included the Bankruptcy case number, the fact it was filed in the

**PLAINTIFF KELLIE GADOMSKI'S OPPOSITION TO DEFENDANT EQUIFAX INFORMATION SERVICES LLC'S PARTIAL MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT AND TO STRIKE PLAINTIFF'S CLASS ALLEGATIONS**

C.O. LAW, APC
3148 MIDWAY DR., SUITE 203
SAN DIEGO, CA 92110

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Eastern District of California (Sacramento), as well as the filing and discharge dates. FAC ¶¶138-139, 145-146. In essence, Equifax had all the necessary information it needed both prior to and after receiving the Dispute to easily ascertain that Plaintiff had filed for and received a Chapter 7 bankruptcy discharge, and that the Account was included in the bankruptcy. However, Equifax ignored and/or disregarded Plaintiff's Dispute, and failed to review the information it had in its possession from LexisNexis and/or PACER in its reinvestigation. FAC ¶¶148-150. This led to Equifax inaccurately continuing to report the Account as "Charged Off" and again failed to report Plaintiff's Bankruptcy in the "Public Records" section of Plaintiff's Equifax report in response to Plaintiff's Dispute. FAC ¶146. With these factual allegations, Plaintiff has sufficiently alleged that Defendant acted willfully in its violations of the FCRA. Moreover, whether Equifax *willfully* violated the FCRA is a question of fact for the jury and not suitable for adjudication in a Motion to Dismiss.[8] Thus, Defendant's Motion should be denied.

### D. Equifax's Motion To Strike Class Allegations Should Be Denied As Improper and Premature.

Defendant's Motion To Strike Class Allegations should be denied because (i) this Court previously denied Defendant's exact Motion on this issue; and (ii) jurisdiction over Equifax is proper.

---

[8] *Adan v. Insight Investigation, Inc.*, No. 16CV2807-GPC(WVG), 2018 WL 467897, at *8 (S.D. Cal. Jan. 18, 2018); *Taylor v. First Advantage Background Servs. Corp.*, 207 F. Supp. 3d 1095, 1112 (N.D. Cal. 2016) (citing cases); *Edwards v. Toys "R" Us*, 527 F. Supp. 2d 1197, 1210 (C.D. Cal. 2007) (willfulness under FCRA is a fact question for the jury) (citing *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995) ("The reasonableness of the procedures and whether the [insurance] agency followed them will be jury questions in the overwhelming majority of cases.").

C.O. LAW, APC
3148 MIDWAY DR., SUITE 203
SAN DIEGO, CA 92110

### i. THIS COURT ALREADY ADDRESSED AND REJECTED EQUIFAX'S ATTEMPT TO STRIKE PLAINTIFF'S CLASS ACTION ALLEGATIONS IN ITS PREVIOUS ORDER

As Equifax attempted to do in their previous Motion to Dismiss (*See generally* ECF No. 17), Equifax again tries to strike Plaintiff's class action allegations in their current Motion. Equifax relies on the argument that the reporting issues in this case are too individualized for class action certification. Defendant's Motion, at 13-15. Plaintiff countered this argument in depth in her previous Opposition to Motion to Dismiss. *See generally* ECF No. 20. Moreover, this Court already stated in its previous Order, "The Court need not reach the merits of Defendant's arguments because the Court declines to strike class allegations at this early stage in the proceedings." ECF No. 26, at 11-12. Accordingly, in the interest of judicial economy, Plaintiff maintains the arguments made in her previous opposition motion but will not rehash similar arguments here. Once again, Equifax's current Motion at the pleading stage is simply premature, and the Court will be better suited to address Equifax's concerns after the parties have developed the factual record.[9]

### ii. JURISDICTION OVER EQUIFAX IS PROPER

Equifax also moves to strike for lack of personal jurisdiction. In doing so, Equifax asks this Court to extend to the class action context the holding in *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.* 137 S.Ct. 1773 (2017). There, the Supreme Court held that a defendant's activities supporting personal jurisdiction over one set of claims did not confer specific jurisdiction over the same defendant for claims related to other activities. *Id.* at 1781-82. However,

---

[9] "Undoubtedly, addressing these arguments at a later date will require additional time and expense on the part of the defendants. But the Court is reluctant to preemptively deny Plaintiff at least the opportunity to present a motion for class certification." *Cole v. Asurion Corp.,* 2008 WL 5423859, *14 (C.D. Cal. Dec. 30, 2008).

**PLAINTIFF KELLIE GADOMSKI'S OPPOSITION TO DEFENDANT EQUIFAX INFORMATION SERVICES LLC'S PARTIAL MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT AND TO STRIKE PLAINTIFF'S CLASS ALLEGATIONS**

C.O. LAW, APC
3148 MIDWAY DR., SUITE 203
SAN DIEGO, CA 92110

C.O. LAW, APC
3148 MIDWAY DR., SUITE 203
SAN DIEGO, CA 92110

this Court should join the clear majority of its sister courts in this Circuit and elsewhere, and decline to extend *Bristol-Myers*, which was decided in the mass action context, because Rule 23's elements supply due process safeguards in a way that mass tort actions do not. *Molock v. Whole Foods Mkt., Inc.*, No. 16-cv-02483 (APM), 2018 WL 1342470, at *5 (D.D.C. Mar. 15, 2018).

Most courts hold that, unless the plaintiff's jurisdictional claim is frivolous, the district court should ordinarily allow discovery on jurisdictional facts.[10] Equifax does not contest that it is subject to this Court's specific personal jurisdiction as to Plaintiff's individual claims. Instead, Equifax asserts that under *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*, this Court does not have specific jurisdiction over the claims of the absent class members. Defendant's Motion, at 15-18. The crux of Equifax's argument is that because Plaintiff seek to represent a national class, non-California resident members' claims must have arisen in California, or else those non-members may not bring suit against Equifax in California.  Both cases Equifax cites for this proposition— *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) and *Myers v. Bennett Law Offices*, 238 F.3d 1068, 1073 (9th Cir. 2001)) (quotations omitted)—pre-date *Bristol-Meyers*, arose in the individual, rather than the class context, and thus require no further consideration.

Instead, the proper analysis begins with *Bristol-Meyers*, and follows the majority view of the district courts in the Ninth Circuit and elsewhere that roundly reject Equifax's position. In *Bristol-Meyers*, the Supreme Court held that a

---

[10] *Benjamin v. TransUnion, L.L.C.*, 2015 WL 3387158 (E.D. Pa. May 26, 2015) (FCRA claims). *See also Negron-Torres v. Verizon Communications, Inc.*, 478 F.3d 19, 27 (1st Cir. 2007) (holding that if the plaintiff's complaint "makes out a colorable case for the existence of in personam jurisdiction," the plaintiff "may well be entitled to a modicum of jurisdictional discovery if the corporation interposes a jurisdictional defense'"); *Bernard v. Atlas Score, L.L.C.*, 2013 WL 997083, at *2 (D. Or. Mar. 12, 2013).

**PLAINTIFF KELLIE GADOMSKI'S OPPOSITION TO DEFENDANT EQUIFAX INFORMATION SERVICES LLC'S PARTIAL MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT AND TO STRIKE PLAINTIFF'S CLASS ALLEGATIONS**

California state court lacked specific personal jurisdiction over the claims asserted by out-of-state plaintiffs in a mass tort action with over 600 individual plaintiffs. 137 S.Ct. at 1778, 1781-82. Specifically, the Court held that a defendant's activities supporting personal jurisdiction over one set of claims (a non-resident defendant's in-state activities relating to the in-state plaintiffs) did not confer specific jurisdiction over the same defendant for claims related to other activities (a defendant's out-of-state activities relating to the out-of-state plaintiffs). *Id.* at 1781-82. Courts have since recognized two main distinctions when deciding whether to apply *Bristol-Myers*: first, both the majority opinion and Justice Sotomayor's dissent make it clear that the holding left open whether the decision applied to federal courts (*Molock v. Whole Foods Mkt., Inc.*, No. 16-cv-02483 (APM), 2018 WL 1342470, at *5(D.D.C. Mar. 15, 2018).); and second, *Bristol-Myers* applied to a mass tort action with individually named plaintiffs, and not a class action. *Id.* at *6 (collecting cases). The class action device, after all, was designed as an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only. *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 155, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982).

In *Molock v. Whole Foods Market, Inc.*, the court rejected Whole Foods' argument that *Bristol-Meyers* should be extended to class actions, adopting instead the plaintiffs' reasoning that such an extension would effectively eviscerate all multi-state class actions and the purpose of Fed. R. Civ. P. 23."[11] *Molock* was a class action brought by seven Whole Foods' employees who were residents of various

---

[11] *Molock*, 2018 WL 1342470, at *5 (internal quotations omitted), *and id.* at n.4 ("Justice Sotomayor observed that the majority in *Bristol–Myers* "does not confront the question whether its opinion here would also apply to a class action in which a plaintiff injured in the forum State seeks to represent a nationwide class of plaintiffs, not all of whom were injured." (quoting *Bristol–Myers*, 137 S.Ct. at 1789 n.4 (Sotomayor, J., dissenting)).

**PLAINTIFF KELLIE GADOMSKI'S OPPOSITION TO DEFENDANT EQUIFAX INFORMATION SERVICES LLC'S PARTIAL MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT AND TO STRIKE PLAINTIFF'S CLASS ALLEGATIONS**

C.O. LAW, APC
3148 MIDWAY DR., SUITE 203
SAN DIEGO, CA 92110

states and the District of Columbia. *Id.* at *2. All of the causes of action were drawn from various state law theories in the Plaintiffs' respective resident states. *Id.* at 3. Supporting its decision not to extend *Bristol-Meyers*, the court was persuaded by the material distinctions between a class action and a mass tort action:

> As a primary matter in a mass tort action, each plaintiff is a real party in interest to the complaints; by contrast, in a putative class action, "one or more plaintiffs seek to represent the rest of the similarly situated plaintiffs, and the 'named plaintiffs' are the only plaintiffs actually named in the complaint."

*Id.* at *6 (citing *Sanchez v. Launch Tech. Workforce Sols.*, LLC, No. 17-cv-1904, --- F.Supp.3d ----, 2018 WL 942963, at *1 (N.D. Ga. Feb. 14, 2018); *and* quoting *Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc.*, No. 17-CV-00564 NC, 2017 WL 4224723, at *5 (N.D. Cal. Sept. 22, 2017); *In re Chinese–Manufactured Drywall Prods. Liability Litig.*, No. MDL 09-2047, 2017 WL 5971622, at *12–14 (E.D. La. Nov. 30, 2017)).

The court also reasoned that unlike a mass tort action, "for a case to qualify for class action treatment, it needs to meet the additional due process standards for class certification under Rule 23—numerosity, commonality, typicality, adequacy of representation, predominance and superiority.'" *Id.* at *7 (quoting *In re Chinese–Manufactured Drywall*, 2017 WL 5971622, at *14). The court emphasized that these class action elements supply due process safeguards in a way that mass tort actions do not. *Id.* Although *Molock* represents what appears to be the most recent rejection of Equifax's position, it is also in good company, including a clear majority of trial courts in the Ninth Circuit.[12]

---

[12] *Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc.,* No. 17-CV-00564 NC, 2017 WL 4224723, at *5 (N.D. Cal. Sept. 22, 2017) (*Brystol-Meyers* was not a class action; it was a mass tort action in state court, thus materially distinguishable); *In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 2017 WL 5971622 at *12 (quoting *Fitzhenry-Russell* for same); *Tickling Keys, Inc. v. Transamerica Fin. Advisors, Inc.*, 2018 WL

**PLAINTIFF KELLIE GADOMSKI'S OPPOSITION TO DEFENDANT EQUIFAX INFORMATION SERVICES LLC'S PARTIAL MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT AND TO STRIKE PLAINTIFF'S CLASS ALLEGATIONS**

C.O. LAW, APC
3148 MIDWAY DR., SUITE 203
SAN DIEGO, CA 92110

In sum, *Bristol-Myers* provides no meaningful directive for extending *Bristol-Myers* to class actions. The proper conclusion in this action is that *Bristol-Myers* does not extend to this class action. Plaintiff is a citizen of the forum state, brought this action under federal law, and Equifax's contacts with the forum state supply the basis for asserting this Court's specific jurisdiction. Given the additional layers of the elements under Rule 23, there is no prejudice to Equifax that flows from asserting specific jurisdiction in this Court.

## IV.   **CONCLUSION**

For these reasons, the Court should deny Equifax's Partial Motion to Dismiss and Strike Plaintiff's Class Action Allegations. Nevertheless, should the Court grant Defendant's motion, in whole or in part, Plaintiff respectfully requests leave to modify or amend the FAC of any deficiencies.

---

1701994, at *6 (M.D. Fla. Apr. 4, 2018) (quoting *Fitzhenry-Russell* for same); *Feller v. Transamerica Life Ins. Co.*, No. 216CV01378CASAJW, 2017 WL 6496803, at *17 (C.D. Cal. Dec. 11, 2017) ("The Supreme Court in [*Brystol-Meyers*] applied its reasoning to the narrower grounds of personal jurisdiction in the context of mass tort actions. Its reasoning does not reach so far as to bar the nonresident unnamed class members."); *Alvarez v. NBTY, Inc.*, No. 17-cv-00567-BAS-BGS, 2017 WL 6059159, at *6 (S.D. Cal. Dec. 6, 2017) ("Though *Bristol-Myers* is arguably instructive to federal courts handling class actions, its holding did not create a new defense for Defendants that was not available before its decision."); *Day v. Air Methods. Corp.*, No. 5:17-183-DCR, 2017 WL 4781863, at *2 (E.D. Ky. Oct. 23, 2017) (holding that claims of non-resident unnamed class members did not destroy personal jurisdiction because "the inquiry for personal jurisdiction lies with the named parties of the suit asserting their various claims against the defendant, not the unnamed proposed class members"); *Thomas v. Kellogg Co.*, Case No. C13-5136RBL, 2017 WL 5256634, at *1 (W.D. Wash. Oct. 17, 2017) (denying defendant's motion to dismiss opt-ins' claims, explaining that it is "not at all clear that *Bristol Myers* even applies" to cases concerning federal class claims in federal court); *AM Trust v. UBS AG*, 78 F.Supp.3d 977, 986 (N.D. Cal. Jan. 29, 2015) (stating that "claims of unnamed class members are irrelevant to the question of specific jurisdiction" but dismissing the complaint for lack of specific jurisdiction as to the claims of the named class members).

**PLAINTIFF KELLIE GADOMSKI'S OPPOSITION TO DEFENDANT EQUIFAX INFORMATION SERVICES LLC'S PARTIAL MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT AND TO STRIKE PLAINTIFF'S CLASS ALLEGATIONS**

C.O. LAW, APC
3148 MIDWAY DR., SUITE 203
SAN DIEGO, CA 92110

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Dated:  August 9, 2018

Respectfully submitted,

C.O. LAW, APC

By:  ___/s/ Clark Ovruchesky___
CLARK OVRUCHESKY, ESQ.
ATTORNEY FOR PLAINTIFF

[ADDITIONAL PLAINTIFF'S COUNSEL]

C.O. LAW, APC
Clark Ovruchesky, Esq. (301844)
co@colawcalifornia.com
3148 Midway Dr., Suite 203
San Diego, California 92110
Telephone: (619) 356-8960
Facsimile: (619) 330-7610

C.O. LAW, APC
3148 MIDWAY DR., SUITE 203
SAN DIEGO, CA 92110

**PLAINTIFF KELLIE GADOMSKI'S OPPOSITION TO DEFENDANT EQUIFAX INFORMATION
SERVICES LLC'S PARTIAL MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT
AND TO STRIKE PLAINTIFF'S CLASS ALLEGATIONS**

## PROOF OF SERVICE

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action.  My business address is C.O. LAW, APC, 3148 Midway Dr., Suite 203, San Diego, California, 92110.  On August 9, 2018, I served the within document(s):

- **PLAINTIFF KELLIE GADOMSKI'S OPPOSITION TO DEFENDANT EQUIFAX INFORMATION SERVICES LLC'S PARTIAL MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT AND STRIKE PLAINTIFF'S CLASS ALLEGATIONS**

☐　E-MAIL - by transmitting via e-mail the document(s) listed above to the e-mail address listed below on this date before 11:59 p.m.

☐　MAIL - by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Costa Mesa, California addressed as set forth below.

☐　PERSONAL SERVICE - by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

☐　OVERNIGHT COURIER - by placing the document(s) listed above in a sealed envelope with shipping prepaid, and depositing in a collection box for next day delivery to the person(s) at the address(es) set forth below via.

☒　CM/ECF - by transmitting electronically the document(s) listed above to the electronic case filing system on this date before 11:59 p.m.   The Court's CM/ECF system sends an e-mail notification of the filing to the parties and counsel of record who are registered with the Court's CM/ECF system.

I am readily familiar with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.  Executed on August 9, 2018, at San Diego, California.

_____/s/ Clark Ovruchesky____
CLARK OVRUCHESKY

C.O. LAW, APC
3148 MIDWAY DR., SUITE 203
SAN DIEGO, CA 92110